# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

SKYLER SHELDON,

     *Plaintiff*,

v.                                      Civ. No:_____

THE UNIVERSITY OF NEW MEXICO,
*a public university,*
THE UNIVERSITY OF NEW MEXICO
BOARD OF REGENTS,
*in their official capacities,*
ANGELA CATENA,
*In her official capacity,*
MICHELLE SANCHEZ,
*in her official capacity,*
and
BEN ZINKE,
*in his official capacity,*

     *Defendants*.

## COMPLAINT FOR DECLARATORY AND
## INJUNCTIVE RELIEF

     Plaintiff Skyler Sheldon, by and through undersigned counsel, brings this

Complaint for Declaratory and Injunctive Relief against Defendants. In support thereof,

Plaintiff Sheldon states:

### Introduction

     On July 20, 2022 the University of New Mexico[1] and the University of New

Mexico's Board of Regents (hereinafter "Board of Regents"), through the University of

New Mexico's Office of Compliance, Ethics and Equal Opportunity (hereinafter

---

[1]  In this complaint, Defendants will be referred to collectively as UNM.

"CEEO") informed undergraduate student Plaintiff Skyler Sheldon (hereinafter "Skyler") about an investigation of him for an alleged Title IX incident that happened in April of 2021. UNM's Title IX investigation, the initial hearing, and its ongoing investigation and desire to hold another hearing into the alleged sexual assault profoundly violated Skyler's rights to due process and equal protection of the law. These violations of Plaintiff's rights – violations based on his status as a male student – occurred through the consistent and blatant disregard for Skyler's procedural due process and equal protection rights required by Title IX and the federal constitution.

In short, UNM failed to provide its Title IX employees with sufficient education and training on the fundamentals of conducting a fair and impartial investigation into allegations of sexual assault on UNM's campus. UNM's failure to sufficiently train and employ competent and impartial investigators and hearing officers to apply Title IX and Title IX's rules equally to male and female students violates Title IX, *see* 20 U.S.C. §§1681 to 1688, Title IX's regulations, *see* 34 C.F.R. §§ 106.1 to 106.82, as well as UNM CEEO's own Discrimination Grievance Procedure and the equal protection and due process guarantees of the federal constitution. Skyler contends UNM's disregard for his basic due process and equal protection rights are based on his status as a male student. Such constitutional violations and violations of Title IX and Title IX's regulations constitutes a violation of his civil rights under 42 U.S.C. § 1983. Skyler respectfully requests this Court to issue a declaratory judgment that UNM's Title IX program is incapable of conducting fair and impartial hearings until these structural problems are remedied and to provide immediate injunctive relief that halts UNM's Title IX hearing scheduled to take place in his case on September 26, 2023.

**Parties**

1.     Skyler is a 21-year-old male undergraduate student at the University of New Mexico who is the subject of UNM's Title IX investigation CEEO #1-2022-6195; he is also a resident of Santa Fe, State of New Mexico.

2.     Defendant University of New Mexico is a public state educational institution under the Constitution of New Mexico, Article XII, § 11 that has obligated itself to federal oversight under Title IX, *see* 20 U.S.C. §§1681 – 1688, and aspires to eliminate "discrimination on the basis of sex in any education program or activity receiving Federal financial assistance," *see* 34 C.F.R. § 106.1. At all times relevant to these allegations, the University of New Mexico was acting under the color of state law.

3.     Defendant University of New Mexico Board of Regents is responsible for the operations of the University of New Mexico and has general supervisory control over the University and of the actions and inactions of its employees, officers, and agents employed on the University's behalf. At all times relevant to these allegations, the University of New Mexico Board of Regents was acting under the color of state law.

4.     Defendant Angela Catena (hereinafter "Catena") is the Title IX Coordinator at UNM and was at all times material to this action responsible for Title IX investigations at UNM. Upon information and belief, Catena is a resident of Bernalillo County, New Mexico and was at all times relevant to these allegations acting under the color of state law.

5.     Defendant Michelle Sanchez (hereinafter "Sanchez") is the Compliance Manager for UNM's Office of Compliance, Ethics and Equal Opportunity (hereinafter "CEEO") and was at all times material to this action, responsible for the Title IX investigation, CEEO #I-2022-6195. Upon information and belief, Sanchez is a resident of Bernalillo

County, New Mexico and was at all times relevant to these allegations acting under the color of state law.

6.      Defendant Ben Zinke (hereinafter "Zinke") is a Hearing Officer with the UNM Hearing Office and is responsible for pre-hearing decisions regarding the Title IX hearing to be held on September 26, 2023, and the determination of responsibility for this case. Upon information and belief, Zinke is a resident of Bernalillo County, New Mexico and was at all times relevant to these allegations acting under the color of state law.

**Jurisdiction and Venue**

7.      This Court has original federal jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. § 1331 because the issues in this suit arise "under the Constitution, laws, or treaties of the United States." *See* 28 U.S.C. § 1331.

8.      Venue is proper in this federal judicial district because all parties are residents of this federal judicial district and a substantial number of events that formed the basis of this action occurred here. *See* 28 U.S.C. § 1391(b).

**Factual Background**

**I.      April 24th to 25th 2021**

9.      On April 24, 2021, Skyler and his UNM dorm suitemate, Wesley Graham (hereinafter "Wesley"), attended  an off-campus party.

10.     Skyler did not have a car, so Wesley drove him to the party.

11.     At that party, Skyler encountered Betty Smith (hereinafter "Betty"),[2] an acquaintance he had met through a Rotary youth exchange program they attended in high school.

---

[2]  Betty Smith is a pseudonym for the complainant.

12.    Betty had come to the party with two other females, one of whom was their designated driver.

13.    Betty and her girlfriends were having a night on the town and looking to connect with males for the evening.

14.    Betty was attracted to Skyler.

15.    To orchestrate a hook up with Skyler, Betty fabricated a story that she needed a place spend the night.

16.    During the party, Betty asked Skyler if she could spend the night with him because she did not want to go back to her apartment due to her neighborhood being sketchy.

17.    Betty asked Skyler if she could spend the night at his dorm.

18.    Skyler told Betty that she could stay with him if she could not find another place to stay.

19.    Betty did not look for another place to stay.

20.    When the party began to break up, Betty grabbed Skyler and took him to her designated driver's car.

21.    Betty whisked Skyler away so quickly that he did not have time to gather his keys to the dorm out of Wesley's car.

22.    On April 25, 2023, at approximately 2 a.m., Betty had her friend Gwen Delmargo-Lewis (hereinafter "Gwen") drive Skyler and Betty to Skyler's dorm.

23.    The only people in Gwen's car were Gwen, Betty, and Skyler.

24.    During the drive to the dorm, Betty did not sit in the front passenger seat next to her friend Gwen, who she came to the party with.

25.     Betty chose instead to sit with Skyler in the back seat of Gwen's car so she could make out with Skyler.

26.     On the way to Skyler's dorm Betty willingly performed fellatio on Skyler in the back seat of the car.

27.     When they arrived at Skyler's dorm where Betty wanted to spend the night, Betty apologized to Gwen for having sex in the back seat of Gwen's car.

28.     Gwen asked Betty if she was okay.

29.     Betty told Gwen she was fine.

30.     When Betty and Skyler got to the secluded side door to Skyler's dorm, Skyler realized that he did not have his key to get inside.

31.     Skyler called Wesley to let them inside.

32.     While waiting for Wesley to arrive, Betty and Skyler retreated behind the bushes beside the dorm where Betty resumed performing fellatio on Skyler.

33.     When Wesley arrived to let them in, he saw Betty giving fellatio to Skyler.

34.     Betty stopped so Wesley could let them into the dorm.

35.     Wesley's dorm room had a common bathroom with Skyler's dorm room.

36.     Wesley let Betty and Skyler into his room so they could get into Skyler's room.

37.     After Wesley, Betty, and Skyler went inside Wesley's room, Wesley, Betty, and Skyler talked for about 15 minutes in the bathroom area of the dorm suite between the two dorm rooms.

38.     During that conversation, Betty asked Wesley and Skyler about engaging in threesome sex.

39.     Wesley declined and went to his room.

40.    Skyler and Betty then retreated to Skyler's room.

41.    When inside Skyler's dorm room, Betty and Skyler continued with the consensual sex they had been having that night.

42.    The next morning, Wesley and Skyler drove Betty back to her house.

43.    Along the way, Betty showed Wesley and Skyler her favorite vape store, where Wesley stopped for supplies.

44.    When Betty got home, she communicated with Skyler via Snapchat about what a wonderful evening she had with Skyler.

45.    When Betty's friends came over later that day, Betty wanted to go to the gym.

46.    Before going to the gym, Betty discussed with her friends the bruising she had from the sex with Skyler the night before.

47.    When her friends asked her what happened, Betty informed her friends that she could not remember much about having sex the previous night.

48.    After hours of her friends lobbying Betty to go to the SANE clinic, Betty did.

49.    While at the SANE clinic, Betty declined to be tested for any drug-facilitated sexual assault.

50.    Betty declined such testing, even though she explained her loss of memory to her friends as possibly due to being drugged.

51.    Betty also told her friends that she did not want to report Skyler to the police because he may be innocent and that he may not have sexually assaulted her.

## II.      The Next Year

52.      On March 4, 2022, Betty spoke to Dr. Stephen L. Bishop (hereinafter "Bishop"),
Director of the International Studies Institute at UNM, and told Bishop that Skyler had
raped her the year before.

53.      As a mandatory reporter, Bishop emailed Angela Catena (hereinafter "Catena"),
the Title IX Coordinator at UNM, about Betty's allegation.

54.      Catena had her staff reach out to Betty to discuss Betty's options.

55.      On March 4, 2022, Michelle Sanchez (hereinafter "Sanchez"), UNM's Title IX
compliance manager, reached out to Betty via email about Professor Bishop's email,
explaining UNM's Title IX process to Betty.

56.      A few times during the month of March of 2022, Betty emailed questions to
Sanchez about the Title IX process at UNM.

57.      During the month of March 2022, Betty did not confirm her informal complaint to
Professor Bishop or provide supporting information to Sanchez.

58.      On March 30, 2022, UNM's Title IX Coordinator decided that if Betty did not
respond to their office about how she wanted to proceed, UNM's Title IX office should
close the file.

59.      On May 3, 2022, Women's Resource Center Advocate/Director Aine McCarthy
(hereinafter "McCarthy") emailed Sanchez and informed Sanchez that Betty did not wish
to participate in UNM's Title IX process.

60.      Betty never requested a formal investigation by the Title IX office.

61.      As UNM's Title IX Coordinator was ready to close the file, she also did not
request a formal investigation.

62.     Despite the lack of any request for a formal investigation, and only having an informal report from a University Professor, Sanchez initiated a formal Title IX investigation against Skyler in July of 2022.

### III.   Bishop's Informal Complaint Was Untimely Under Title IX

63.     Under Title IX, a complaint about a sexual assault should be filed within 180 days to be considered timely.

64.     While UNM's Title IX policy allows some untimely complaints, such complaints need to be approved by UNM's Title IX coordinator.

65.     In this case, UNM's Title IX coordinator never approved of Bishop's untimely complaint.

### IV.   UNM Does Not Have Jurisdiction Over Skyler's Case Because Nobody Filed a Formal Title IX Complaint in His Case

66.     Under Title IX, a formal complaint is a document filed by a complainant or signed by the Title IX Coordinator alleging sexual harassment against a respondent and requesting that the recipient investigate the allegation of sexual harassment.

67.     Under UNM's Title IX policy, a formal complaint is to be made on an official complaint form issued by UNM and needs to be signed and dated by the complainant.

68.     While UNM's Title IX Coordinator has the authority to issue a formal complaint, UNM's Title IX Coordinator wanted to dismiss this case due to Betty's lack of cooperation and never issued a formal complaint.

69.     No formal complaint exists in Skyler's case, CEEO #I-2022-6195.

70.     Without a formal complaint, UNM's Title IX program is not authorized to formally investigate an allegation of sexual assault. *See* 34 C.F.R.§ 106.44 (b)(1) & 106.45 (b).

71.    Without a formal complaint, UNM's Title IX program is not authorized to

discipline Skyler in any manner. *See* 34 C.F.R. § 106.45 (b)(1)(i) (stating that the

grievance process must comply "with this section before the imposition of any

disciplinary sanctions or other actions").

### V.    UNM's Notice of Allegations Failed to Meet Title IX's Mandatory Standards

72.    Even though UNM's Title IX program failed to have a timely complaint, failed to

have a formal complaint, and failed to have authority to formally investigate Betty's

claim, UNM proceeded to notify Skyler about the allegations in a manner that also

violated Title IX.

73.    Under Title IX, when advising a respondent about allegations of sexual assault,

UNM has an affirmative obligation to inform the respondent – in the very first

communication – about UNM's grievance process. *See* 34 C.F.R. § 106.45 (b)(2)(i)(A).

74.    On July 20, 2022, UNM provided Skyler with a notice of jurisdiction about his

case.

75.    UNM's failure to say anything at all about UNM's grievance process in that

notice is in direct violation of Title IX and Title IX's regulations.

76.     Likewise, UNM's notice to Skyler stated:

> You are presumed not to have violated University policy until the
> evidence shows otherwise. At the conclusion of a CEEO
> investigation, the matter is sent to the University Hearing Officer,
> who hears the evidence during a live hearing and uses the
> preponderance of the evidence standard in making a determination,
> meaning that the relevant evidence demonstrates it is more likely
> than not that a policy violation occurred.

77.    UNM's notice is at odds with Title IX's requirement that Skyler be informed that

he is "presumed not responsible for the alleged conduct and that a determination

regarding responsibility is made at the conclusion of the grievance process." *See* 34

C.F.R. § 106.45(b)(2)(i)(B).

78.     UNM's notice also informed Skyler that he "may also select an Advisory of your

choice, who will also participate in any live hearing that may result from a CEEO

investigation. Again, this person may not speak on your behalf, but may act as a guide

through the CEEO process."

79.     UNM's notice failed to inform Skyler, as required by Title IX's regulations, that

his advisor "may be, but is not required to be, an attorney." *See* 34 C.F.R. §

106.45(b)(2)(i)(B).

80.     Likewise, UNM's written notice to Skyler's failed to say anything about his right

to "inspect and review evidence." *Id.*

81.     Instead, Skyler's notice told him he would have an opportunity to *provide*

evidence. *Id.* (emphasis added).

82.     What UNM's notice did tell Skyler is that individuals "who provide false

information or misdirect an investigation – whether through falsehood or omission – may

be subject to disciplinary action."

83.     Yet, UNM's investigation showed that Gwen covered up Betty's desire to have

sex with Skyler by:

> (1)     affirmatively stating that Betty told Gwen that Betty was not going
>         to have sex with Skyler that night;
>
> (2)     failingly to say anything at all about Betty giving Skyler fellatio in
>         Gwen's car; and

(3)     failingly to say anything at all about Betty apologizing to Gwen about having sex in Gwen's car on the ride to Skyler's dorm room when Gwen dropped them off that night.

84.     UNM knew that Gwen affirmatively misled UNM's Title IX investigation by covering up Betty's desire to have sex with Skyler that night.

85.     Yet, UNM did not subject Gwen to any disciplinary action for providing materially false information about Betty not wanting to have sex with Skyler or for intentionally misdirecting the investigation through her omissions about Betty having sex in Gwen's car on the way to Skyler's dorm room and apologizing to her for doing so.

**VI.     UNM's Investigative Report is Fundamentally Flawed**

86.     As noted above, Skyler's case has no timely complaint, no formal complaint, inadequate notice and, as will be discussed below, a biased investigative report.

87.     UNM's investigative report details Betty's allegations.

88.     UNM's investigative report did not repeat Betty's desire not to get Skyler into trouble; Betty just did not want to see Skyler on campus.

89.     UNM's investigative report did not reveal that Betty was counseled at length about obtaining a restraining order to keep Skyler away from her, but that she never got one.

90.     UNM's investigative report does claim, falsely, that Betty and "Respondent 'hit the bong'" while in the dorm's bathroom.

91.     Nowhere in UNM's investigation did anyone report that Skyler smokes marijuana or that Skyler "hit the bong."

92.     The investigative report's claim that Skyler "hit the bong" is a fabrication by the investigator.

93.     UNM's investigative report then summarizes the Title IX investigation's "Witness Outreach and Interviews."

94.     As UNM's investigative report admits, however, UNM's Title IX office did not reach out to or interview any witness;[3] UNM's investigation was comprised of reviewing video interviews complied by UNM's Police Department for a limited number of relevant witnesses.

95.     The UNM Title IX investigator did not follow any leads or meaningfully assess or analyze the information provided to UNM Police by the individuals they interviewed.

96.     The Witness Outreach and Interview portion of UNM's investigative report discusses at length the interviews of Betty's mother, Betty's boyfriend, and Betty's best friend from high school.

97.     None of those individuals were with Betty on the night in question or could explain the interactions between Skyler and Betty on the night in question.

98.     While Betty had informed UNM's Title IX office she did not want to work with that office, none of the witnesses had done so.

99.     There was no valid reason for UNM's Title IX office to forego performing its own investigation or following up with questions of the witness.

---

[3] There is a single exception; UNM's Title IX compliance officer Michelle Sanchez did interview Wesley.

100.    For instance, UNM's Title IX investigator did not follow up with Gwen – who was the sober designated driver – about why she did not reveal the fact that Betty gave Skyler fellatio in the back seat of her car.

101.    Likewise, the investigator had no intellectual curiosity about why Gwen failed to disclose the fact that Betty apologized to her for having sex in her car.

102.    The investigator did not care to explore in any manner the level of Skyler's sobriety.

103.    Instead, the witnesses detailed in the Witness Outreach and Interview portion of UNM's investigative report highlighted in great detail Betty purported psychological fear of Skyler and the impact it had on her school.

104.    The information from the primary witnesses who possessed exculpatory information – the ones who were with Betty on the night in question – were excluded from the Witness Outreach and Interview portion of UNM's report.

105.    The Witness Outreach and Interview section of UNM's investigative report only mentioned, superficially, that Wesley provided a statement.

106.    In fact, for the *only* witness that UNM's Title IX office cared to interview, Wesley, the report failed to include anything he said because it was exculpatory.

107.    UNM's report detailed nothing about Wesley having seen Betty having consensual sex with Skyler or asking the two young men about a threesome.

108.    Likewise, the contents of Gwen's interview with UNM Police were not addressed in the investigative report.

109.    UNM's report omitted the fact that Gwen observed Betty and Skyler making out in the back seat of her car.

110.    In short, UNM's investigative report revealed a strong bias in favor of inculpating Skyler by only presenting the inculpatory witnesses in the body of the report.

111.    The report portrayed an anti-male bias and an inability to be fair and impartial by failing to discuss Betty's apology for having consensual sex in Gwen's car or making any assessment about Skyler's sobriety.

112.    In addition, UNM's Title IX investigator failed to adequately assess whether Skyler was sufficiently sober to consent to Betty's sexual advances; that failure reinforces outdated sexual stereotypes and reflects an anti-male bias in UNM's Title IX program.

113.    That failure also violates Skyler's right to equal protection of the law.

**VII.    UNM's Refusal to Provide Skyler with its Police Department Interviews**

114.    In an email dated July 21, 2022, Sanchez informed Betty's advocate that Skyler would be afforded the opportunity to review all evidence in the file.

115.    Title IX's regulations demand that UNM provide that opportunity. *See* 34 C.F.R. § 160.45(b)(2)(i)(B).

116.    UNM's Title IX Discrimination Grievance Procedure also states that the "parties will be provided an equal opportunity to inspect and review any evidence obtained as part of the investigation that is directly related to the allegations raised in a formal complaint, including inculpatory or exculpatory evidence whether obtained from a party or other source, so that each party can meaningfully respond to the evidence prior to conclusion of the investigation."

117.    Yet, when Skyler asked to review UNM Police report and the videos that UNM Police took of the witnesses in this case, UNM's Title IX program refused to allow Skyler to review them.

118.    Skyler had to sue UNM to obtain information in its custody. *See Complaint to Enforce the Inspection of Public Records Act, for Production of Public Records, and for Damages, Costs, and Attorney's Fees*, in *Sheldon v. University of New Mexico Board of Regents,* Case No. D-202-CV-2022-05171, filed on September 2, 2022.

119.    The failure to allow Skyler to review the evidence against him violated his due process and equal protection rights, as well as Title IX, Title IX's regulations, and UNM's Title IX grievance policy.

120.    As noted in UNM's October 10, 2022 Initial Investigative Report, Skyler had "not received the UNM PD report, and so Respondent will not be providing a statement at this time, other than to deny assaulting Complainant in any fashion."

121.    While UNM's Title IX investigators did, ultimately, release a paper copy of UNM's Police report, the videotaped interviews were never produced before the initial Title IX hearing in this matter.

**VIII.   Skyler's Request UNM to Informally Resolve His Case**

122.    On October 10, 2022, Skyler's attorney asked Sanchez for an "informal resolution" in the case.

123.    On October 11, 2022, Sanchez responded to Skyler's counsel that Betty had "elected for a formal investigation."

124.    As a result of that decision, according to Sanchez, an informal resolution "is not an option at this point."

125.    Sanchez's response to Skyler's counsel was patently untrue.

126.    First, Betty never provided Sanchez or anyone else at UNM's Title IX office with an election of a formal resolution.

127.    Instead, Betty had informed UNM's Title IX office that she did not want to communicate with that office.

128.    Second, even if Betty had elected a formal resolution – which she did not – Betty still could have opted for an informal resolution of her case.

129.    Nothing in UNM's Title IX policy prevented UNM from brokering an informal resolution in this case.

130.    In fact, Betty had informed UNM's Police Department that she did not want to get Skyler into any trouble, she just did not want to see him on campus.

131.    Skyler was (and is) more than willing to honor that request.

132.    UNM's Title IX policy concerning sexual assaults only prohibits informal resolutions in cases where a UNM employee sexually assaults a student.

133.    In short, Sanchez's statements to Skyler's attorney were untrue, underscoring the overt anti-male sentiment in her office.

### IX.    The Parties Elect to Skip an In-Person Hearing

134.    Rather than have a live hearing, both parties agreed to allow the initial hearing to proceed on the paper arguments of counsel.

135.    That "hearing" took place on December 22, 2022.

### X.    The Hearing Officer's Decision was Fundamentally Flawed

136.    On February 23, 2023, Skyler received an email with a letter from former Hearing Officer Elizabeth Williams announcing her decision in the matter.

137.    According to that email, the Hearing Officer found Skyler responsible for violating UNM Administrative Policy 2740: Sexual Harassment Including Sexual Assault.

138.    UNM had also decided that the consequence of this violation was Expulsion, being Barred from Campus and Permanent Disciplinary Probation with Conditions.

139.    Apparently, the Dean of Students had "considered past practices of the University in sanctioning factually similar cases, the seriousness of an individual having had findings of violations related to sexual assault, and the fact you were already on Disciplinary Probation," when deciding Skyler's discipline.

140.    Skyler has never been on Disciplinary Probation at UNM; during his entire tenure at UNM Skyler has been an exemplary Dean's List Student.

141.    Ironically, despite the fact that UNM (1) never received a timely complaint, (2) never authorized the untimely complaint to move forward, (3) never had a formal complaint, (4) never had authorization to proceed with a formal investigation, (5) never provided Skyler with an adequate notice of allegation, (6) failed to followed proper investigatory procedures, (7) fabricated evidence against Skyler, (8) never allowed Skyler to review the evidence against him, the Hearing Officer believed that UNM had followed all procedures appropriately.

142.    For instance, the Hearing Officer indicated that UNM had complied with UNM's "grievance hearing process outlined in Section VI(C)3f," addressing Skyler's right to review the evidence against him, even though UNM refused to allow Skyler the opportunity to review the videotaped interviews of the witnesses.

143.    In reference to Opening Statements, the Hearing Officer said that Betty had submitted an opening statement, but Skyler had not.

144.    Skyler had, in fact, submitted an opening statement.

145.    The Hearing Officer states that Wesley observed Betty giving fellatio to Skyler occurred in the dorm hallway when Wesley observed that happened outside the dorm in a secluded location.

146.    Again, every mistake in the analysis was against Skyler, underscoring the anti-male perspective of the process.

### XI.    Skyler's Appeal

147.    On March 2, 2023, counsel for Skyler wrote a letter to Garnett Stokes, UNM President, and Nasha Torrez, Dean of Students, requesting an appeal for the Determination and Imposed Sanctions against Skyler.

148.    On June 12, 2023, President Stokes granted that appeal and remanded the matter to UNM's Title IX office to reopen its investigation and ordered the production of the video and audio recordings that had not been provided before the hearing to Skyler.

149.    President Stokes' decision to remand focused on her concern that UNM had denied Skyler evidence that could undermine Betty's allegations of sexual assault.

### XII.    UNM's Proceedings on Remand Are Equally Flawed

150.    On July 17, 2023, UNM Title IX's office emailed Skyler's attorney an updated Investigative Report and a link to the video and audio recordings that were not provided before the last hearing.

151.    UNM's Title IX office stated in the email that the "investigation is considered closed" by UNM's Title IX office.

152.    UNM's Title IX office did not provide Skyler any additional time to gather new evidence to present to or modify the investigative report.

153.    To make matters worse, the disclosed video recordings had no sound and Skyler's counsel had to request additional copies so counsel could listen to them.

154.    When Skyler's counsel requested an opportunity to come to UNM and review the evidence discussed in the investigative report, including the numerous emails that were mentioned in that report, that request was denied.

155.    On September 6, 2023, when UNM's Title IX office held a pre-hearing status conference, the new Hearing Officer, Ben Zinke, ordered UNM's Title IX office to make those emails available to counsel.

156.    Despite Zinke's order, nowhere in the materials provided is there any indication that that there was any formal approval of the untimely complaint, any indication that a formal complaint had been filed, or any indication that Betty elected to proceed with a formal investigation or declined an informal resolution of this case.

157.    As requested by UNM's Title IX office, Skyler submitted his witness list for the hearing to be held on September 26, 2023.

158.    In addition to himself, Gwen, Wesley, and Betty, Skyler also included an expert witness, Dr. David Ley, on his witness list to testify about Betty's alcohol use and her claimed blackout.

159.    On September 14, 2023, Hearing Officer Zinke denied Skyler's request to have himself or Dr. Ley testify at the hearing to be held on September 26, 2023.

160.    In making that ruling, Hearing Officer Zinke cites the rule that only witnesses that the "CEEO interviewed" could potentially testify.

161.    The three witnesses that Hearing Officer Zinke determined could testify are Gwen, Wesley, and Betty.

162.    The only witness that the CEEO interviewed was Wesley.

163.    If Hearing Officer Zinke's standard for Dr. Ley and Skyler is applied to the remaining witnesses in this case, the only witness who can potentially testify would be Wesley.

164.    Hearing Office Zinke's s refusal to allow Dr. Ley or, apparently Skyler, to testify is an abuse of discretion.

165.    That decision also deprives Skyler of his right to due process and equal protection of the law.

166.    Upon information and belief, Betty will not testify at the hearing.

167.    Betty's refusal to testify will deny Skyler his constitutional due process right to cross examine her about the fundamental flaws in her claim that Skyler sexually assaulted her.

168.    Betty's refusal to testify will prevent Skyler from developing the record that Betty is not being truthful about the events of April 24-25, 2021 and her purported lack of consent.

169.    Betty's refusal to testify will deny Skyler his right to due process and equal protection under the law because she will present her case by proxy – via hearsay that would be traditionally inadmissible in any meaningful tribunal considering fundamental property rights like Skyler's right to complete his degree at UNM – while depriving Skyler of any meaningful attempt to discredit her story and prove she consented to the sexual activity that night.

170.    Under the totality of the circumstances in this case, UNM's Title IX procedures are so fundamentally flawed, and so systematically skewed toward favoring a female's

allegation of sexual assault over a male's ability to prove consent, that males accused of sexual assault like Skyler cannot get a fair hearing in the absence of meaningful cross examination.

171.    The problem presented here is the exact opposite of the problem presented in *Victim Rights Law Center v. Cardona*, 552 F. Supp. 3d 104, (D. Mass. 2021).

172.    The *Cardona* case ruled that if a party refused to testify, the school could still consider statements made by that party.

173.    The rationale for the *Cardona* Court's ruling was that Title IX respondents who provided inculpatory statements to the police could have those statements eliminated from a Title IX hearing by simply refusing to testify.

174.    In this case, Betty can effectively weaponize *Cardona* to insulate her false claims from impeachment by refusing to testify.

175.    Such an outcome clearly impacts Skyler's due process and equal protection rights, as well as his fundamental property right to obtain his diploma from UNM.

176.    Skyler is in his senior year at UNM and has a 3.7 GPA.

177.    While the U.S. Department of Education claims that the *Cardona* court applied its ruling nationwide, the *Cardona* opinion was issued by a federal district court and was without jurisdiction to issue a nationwide prohibition on the enforcement of 34 C.F.R. § 160.45(b)(6)(i).

178.    In this case, Skyler seeks declaratory judgement that the validly enacted Title IX regulations under 34 C.F.R. § 160.45(b)(6)(i) are enforceable in his case so that if "a party or witness does not submit to cross-examination at the live hearing, the decision-

maker(s) must not rely on any statement of that party or witness in reaching a determination regarding responsibility."

179.    UNM's Title IX program is also fundamentally flawed in favor of females in part due to the 2016 "Dear Colleague" letter UNM received in 2016.

180.    In the wake of that letter, UNM has ignored its own policies and procedures to prosecute male students unfairly and unconstitutionally in Title IX cases.

## COUNT I
### DECLARATORY RELIEF
#### (Against all Defendants)

181.    Skyler incorporates all allegations in the foregoing paragraphs as if set forth fully herein.

182.    The Court should acknowledge that the facts of the *Cardona* case do not apply to the circumstances of this case.

183.    The Court should also recognize that UNM is bound to follow Title IX regulations that were duly and fairly adopted by the U.S. Department of Education.

184.    Allowing a Title IX hearing to proceed without the ability of a respondent to effectively and fairly cross examine a complainant would deprive that respondent of a fundamentally fair opportunity to protect their fundamental property right to a university degree.

185.    It also provides the complainant with a unique advantage to inject material falsehoods into the narrative of a case without any meaningful way for a respondent to correct the record.

186.    In light of this imbalance of equities given the fundamental property rights at stake, the Court should declare, under 28 U.S.C. § 2201, that the full scope of Title IX

regulation 34 C.F.R. § 160.45(b)(6)(i) remains in effect in the jurisdiction of New Mexico and that UNM must enforce that regulation in any Title IX hearing.

## COUNT II
### DECLARATORY RELIEF
(Against All Defendants)

187.    Skyler incorporates all allegations in the foregoing paragraphs 1 to 186 as if set forth fully herein.

188.    In this case, no timely complaint has ever been filed against Skyler.

189.    In this case, no formal complaint has ever been filed against Skyler.

190.    Without a timely complaint and a formal complaint, UNM's Title IX office lacks any jurisdiction to hold a formal Title IX hearing or to impose disciplinary action against Skyler.

191.    Considering UNM's failure to follow Title IX and Title IX's regulations for establishing jurisdiction over an allegation of sexual assault, the Court should declare, under 28 U.S.C. § 2201, that UNM lacks the jurisdiction to proceed in the sexual assault case against Skyler under 34 C.F.R. §§ 160.44 & 160.45.

## COUNT III
### DECLARATORY RELIEF
(Against all Defendants)

192.    Skyler incorporates all allegations in the foregoing paragraphs 1 to 191 as if set forth fully herein.

193.    In light of UNM's Title IX office failure to:

        a.   authorize a complaint that was untimely;

        b.   have or issue a formal complaint;

c.  wait for a formal complaint to be filed before proceeding with a formal investigation;

d.  provide Skyler with an adequate notice of the allegations;

e.  follow proper investigatory procedures, including conducting witness interviews and follow up investigations with witnesses with relevant knowledge of the issues;

f.  avoid fabrication of evidence against Skyler;

g.  allow Skyler to review the evidence in this case;

h.  be honest with Skyler's counsel about either Betty's refusal to make an election of remedies or the non-existent prohibition on informal resolutions for this case;

i.  allow Skyler to call exculpatory witnesses;

j.  apply the same legal standard for permitting the complainants' and the respondents' witnesses to testify;

k.  demand that a party must be cross-examined in order for any of their statements to be introduced as evidence at the hearing;

l.  refuse to sanction Gwen for knowingly providing false and misleading information to the investigation in this case; and

m.  be fair and impartial to Skyler throughout the entirety of this case,

this Court should declare, under 28 U.S.C. § 2201, that UNM's Title IX office is not capable of holding conflict free and impartial hearings until UNM satisfies the Court that UNM has provided sufficient training and education for Title IX coordinators,

compliance officers, investigators and hearing officers so that Title IX staff can conduct

an investigation and grievance process that follows the law, including avoiding

prejudgment of the facts at issue, conflicts of interest, and bias under 34 C.F.R. § 160.45

(b)(1)(iii).

## COUNT IV
### DENIAL OF DUE PROCESS OF LAW
#### (Against all Defendants)

194.    Skyler incorporates all allegations in the foregoing paragraphs 1 to 193 as if set

forth fully herein.

195.    For all the reasons discussed above, Defendants, using the color of state law, have

denied or will deny Skyler his fundamental property right to a university education

without due process of law.

196.    Given that Defendants actions have caused and will cause Skyler to be deprived

of rights, privileges, or immunities secured by the Constitution and laws of the United

States, declaratory and injunctive relief is available to Skyler for such violations under 42

U.S.C. § 1983.

## COUNT V
### DENIAL OF EQUAL PROTECTION OF THE LAW
#### (Against all Defendants)

197.    Skyler incorporates all allegations in the foregoing paragraphs 1 to 194 as if set

forth fully herein.

198.    Skyler contends that the systemic failures of UNM to honor his basic due process

rights are because he is a male student attending the University.

199.    Skyler contends that UNM has not treated any female with the overt unfairness, if

not hostility, that he has encountered in UNM's Title IX office.

200.    Given that UNM's Title IX office has caused Skyler to suffer discrimination due to his status as a male student, Defendants actions have caused and will cause Skyler to be deprived of rights, privileges, or immunities secured by the Constitution and laws of the United States, making declaratory and injunctive relief available to Skyler under 42 U.S.C. § 1983 for these violations.

**COUNT VI**
VIOLATION OF TITLE IX
(Against all Defendants)

201.    Plaintiff Skyler Sheldon incorporates all allegations in the foregoing paragraphs 1 to 200 as if set forth fully herein.

202.    Title IX of the Education Amendments of 1972 and Title IX's regulation codified at 34 C.F.R. §§ 106.1 to 106.82, prohibits discrimination on the basis of sex in UNM's education program or activities, including all of a school's operations.

203.    Defendant UNM is an educational institution receiving federal financial assistance under Title IX.

204.    Defendant UNM, through its agents, owe a duty to ensure that no student is excluded from participation in, denied the benefit of, or is subjected to discrimination under any educational program on the basis of sex.

205.    Defendants have deprived Plaintiff, because of his sex, his right to due process and equal protection by subjecting Skyler to the procedurally flawed, improper, and biased administration of UNM's Title IX investigative and grievance process, and hearings.

206.    UNM's investigation and grievance process has been unfairly utilized to harass Skyler because he is male, and the result of that flawed process will deprive Skyler of his

right to have a discrimination-free educational environment under Title IX, as well as his degree from UNM.

207.     Defendants' actions here were intentional, in some instances malicious, and in deliberate indifference to Skyler's right to be treated fairly as a male student.

208.     Defendants' failure to provide adequate education and training for UNM's Title IX staff underscores UNM's deliberate indifference to the needs of male students, like Skyler, who are treated with disregard and bias by UNM's Title IX staff.

209.     Defendants failed to ensure impartial and conflict-free resolution of Skyler's Title IX complaint.

210.     Defendants permitted UNM's Title IX office to reveal their bias and lack of impartiality by also allowing their investigators to ignore the possibility that respondent may have been too intoxicated to consent to having sex with Betty.  The fact that UNM did not independently explore that possibility shows a bias against male students at UNM.

211.     As a result of UNM's failures, Skyler suffered a biased, prejudiced, and explicitly unfair process because he was male in violation of Title IX; Skyler is entitled to declaratory and injunctive relief addressing such discrimination.

**COUNT VII**
INJUNCTIVE RELIEF
(Against all Defendants)

212.     Plaintiff Skyler Sheldon incorporates all allegations in the foregoing paragraphs 1 to 211 as if set forth fully herein.

213.     For all the reasons discussed above, Defendants should be enjoined from:

     a.   Proceeding with the September 26, 2023 hearing against Skyler due to the lack of jurisdiction;

     b.   Proceeding with any hearing that allows the statements of any witness to be used unless they are subject to cross examination;

     c.   Proceeding with any disciplinary action at all against Skyler due to the failure of UNM's Title IX office to follow Title IX's regulations;

     d.   Proceeding with any Title IX hearing unless and until UNM has demonstrated to the Court that sufficient education and training has been provided to UNM's Title IX staff that Title IX complaints, investigations, and hearings can be handled free from bias, conflicts, and prejudicial presumptions about gender and/or gender roles.

214.    As a result of the facts as alleged in this complaint, Skyler is entitled to the injunctive relief requested above against the Defendants.

## Prayer for Relief

WHEREFORE, for the foregoing reasons, Plaintiff Skyler Sheldon respectfully requests the Court to award:

A.    Declaratory relief as set forth above;

B.    Injunctive relief as set forth above;

C.    Expungement of Plaintiff's educational records reflecting all of the adverse actions UNM has taken in this matter, including initiating an improper investigation, conducting a fundamentally flawed investigation, conducting a flawed hearing, and

continuing to persist in a flawed hearing process, and prohibition of UNM from

dissemination any information concerning this case to any individual or entity without the

express approval of this Court;

D.      Skyler's attorney fees and costs under 42 U.S.C. §§ 1983 & 1988; and

E.      Any other relief the Court deems just and proper.

Respectfully Submitted,

ROTHSTEIN DONATELLI LLP

MARC M. LOWRY
MARGIE A. RUTLEDGE
500 4th St., NW Suite 400
Albuquerque, New Mexico  87102
505-243-1443
*Attorneys for Plaintiff Skyler Sheldon*