UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SKYLER SHELDON,

    *Plaintiff*,

v.                                          Civ. No: 23-CV-813 LF/KRS

THE UNIVERSITY OF NEW MEXICO,
*a public university,*
THE UNIVERSITY OF NEW MEXICO
BOARD OF REGENTS,
*in their official capacities,*
ANGELA CATENA,
*In her official capacity,*
MICHELLE SANCHEZ,
*in her official capacity,*
and
BEN ZINKE,
*in his official capacity,*

    *Defendants*.

**PLAINTIFF SHELDON'S EMERGENCY
MOTION FOR A TEMPORARY RESTRAINING ORDER**

Plaintiff Skyler Sheldon, by and through undersigned counsel, moves the Court for a Temporary Restraining Order ("TRO") to be followed by a Preliminary Injunction hearing against the Defendants in this matter. Plaintiff Sheldon seeks a TRO to halt Defendants from proceeding with a Title IX hearing set to take place on September 26, 2023, at 9 a.m. Plaintiff Sheldon seeks to vacate that hearing because Defendants do not have jurisdiction under Title IX or the regulations governing UNM's Case # I-2022-6195, making the September 26, 2023 hearing improper.

### Introduction

The University of New Mexico (UNM) Hearing Office has set an Administrative Hearing for September 26, 2023 to take evidence into allegations of a sexual assault involving Plaintiff Skyler Sheldon. Plaintiff Sheldon moves to vacate or terminate those proceedings because UNM does not have jurisdiction to proceed in his case, Case #I-2022-6195. To the extent UNM may have any jurisdiction, which Plaintiff Sheldon disputes, the Court should vacate that hearing as it violates due process and equal protection rights guaranteed by our constitution and Title IX.

### FACTS

1. The underlying case addresses whether two teenagers who engaged in sex inside a UNM dorm violated UNM policy.

### UNM NEVER OBTAINED JURISDICTION TO HOLD FORMAL DISCIPLINARY PROCEEDINGS

2. The issue here is straightforward and simple. Under the regulations governing Title IX, a university can proceed with a formal investigation and disciplinary hearing only if a formal complaint is lodged and UNM has followed federal grievance procedures.

3. Neither of these triggering events occurred in this case.

4. Under Title IX, UNM:

> must treat complainants and respondents equitably by offering supportive measures as defined in § 106.30 to a complainant, and by following a grievance process that complies with § 106.45 before the imposition of any disciplinary sanctions or other actions that are not supportive measures as defined in § 106.30, against a respondent.

*See* 34 C.F.R. § 160.44 (a).

5. UNM invited the complainant on multiple occasions to file a formal complaint.

6. Each time, the complainant refused to do so.

7. When UNM's Title IX Coordinator was apprised of the complainant's failure to file a formal complaint or election of remedies, she stated in her jurisdictional report that UNM's Title IX office was to "proceed with CP election.  If no response, okay to close." *See* Exhibit 1, Jurisdictional Review.[1]

8. According to UNM, the CP responded by having her advisor inform UNM's Title IX Compliance Officer, Michelle Sanchez ("Sanchez"), the CP "did not wish to participate in the CEEO's process."[2]

9. Quite simply, there was never a formal complaint of any sort in this case.

10. Under Title IX, if a formal complaint is filed, UNM "must follow a grievance process that complies with § 106.45."  *See* 34 C.F.R. § 160.44 (b)(1).

11. Without a formal complaint, UNM "must comply with § 106.44(a)."  *Id.*

**UNM'S NOTICE FAILED TO COMPLY WITH TITLE IX'S REQUIREMENTS**

12. Despite not having any formal complaint concerning a sexual assault, UNM purported to follow the procedures outlined by Title IX for formal complaints.  *See* 34 C.F.R. § 106.45 (entitled Grievance process for formal complaints of sexual harassment").

13. Yet, UNM failed to follow the mandatory requirements of 34 C.F.R. § 106.45 (b) (stating that for "the purpose of addressing formal complaints of sexual harassment, a recipient's grievance process must comply with the requirements of this section").

14. For example, any notice about a formal complaint must comply with the provisions of 34 C.F.R. § 106.45(b)(2)(i).

---

[1] CP is an abbreviation for "Complaining Party."
[2] CEEO is an abbreviation for the Office of Compliance, Ethics & Equal Opportunity" and is referred to throughout this pleading as UNM's Title IX office.

15.     As discussed in Plaintiff Sheldon's Complaint, the notice UNM's Title IX office provided to Plaintiff Sheldon failed to do so.  *See* Exhibit 2.

1.      For example, UNM's notice to Plaintiff Sheldon stated:

> You are presumed not to have violated University policy until the evidence shows otherwise. At the conclusion of a CEEO investigation, the matter is sent to the University Hearing Officer, who hears the evidence during a live hearing and uses the preponderance of the evidence standard in making a determination, meaning that the relevant evidence demonstrates it is more likely than not that a policy violation occurred.

2.      UNM's notice is at odds with Title IX's requirement that Plaintiff Sheldon be informed that he is "presumed not responsible *for the alleged conduct* and that a determination regarding responsibility is made at the conclusion of the grievance process." *See* 34 C.F.R. § 106.45(b)(2)(i)(B) (emphasis added).

3.      UNM's notice also informed Plaintiff Sheldon that he "may also select an Advisory of your choice, who will also participate in any live hearing that may result from a CEEO investigation. Again, this person may not speak on your behalf, but may act as a guide through the CEEO process."

4.      UNM's notice failed to inform Plaintiff Sheldon, as required by Title IX's regulations, that his advisor "may be, but is not required to be, an attorney." *See* 34 C.F.R. § 106.45(b)(2)(i)(B).

5. UNM's written notice was required to advise Plaintiff Sheldon's about his right to "inspect and review evidence." *Id.*[3]

6. Instead, Plaintiff Sheldon's notice told him he would have an opportunity to *provide* evidence. *Id.* (emphasis added).

7. Hence UNM's Title IX office lost jurisdiction over this case for two reasons: (1) failing to have a formal complaint; and (2) failing to abide by the mandatory grievance procedures. *See* 34 C.F.R. §§ 106.44 (b)(1) & 106.45 (b)(2).

**UNM'S TITLE IX OFFICE SUFFERS FROM INSUFFICIENT EDUCATION & TRAINING**

8. In addition, UNM's Title IX office has proven itself to be remarkably inept.

9. Plaintiff Sheldon will incorporate by reference his Complaint for greater detail, but suffice it to say that UNM's Title IX program, in this case:

> never received a timely complaint, (2) never authorized the untimely complaint to move forward, (3) never had a formal complaint, (4) never had authorization to proceed with a formal investigation, (5) never provided Plaintiff Sheldon with an adequate notice of the allegation, (6) failed to followed proper investigatory procedures, (7) fabricated evidence against Plaintiff Sheldon, and (8) never allowed Plaintiff Sheldon to review the evidence against him before holding the first hearing.

10. For the second hearing, UNM's Title IX office continues to maintain a double standard that favors females over males and lacks any sense of due process or equal protection.

---

[3] As noted in the Complaint, Plaintiff Sheldon had to sue UNM to obtain information that UNM's Title IX office was supposed to have freely allowed him "to inspect and review." *See Complaint to Enforce the Inspection of Public Records Act, for Production of Public Records, and for Damages, Costs, and Attorney's Fees*, in *Sheldon v. University of New Mexico Board of Regents,* Case No. D-202-CV-2022-05171, filed on September 2, 2022.

11. On September 14, 2023, Plaintiff Sheldon received a ruling from the new Hearing Officer for the hearing scheduled for September 26, 2023.

12. That letter informed Plaintiff Sheldon that Plaintiff Sheldon's key expert witness, Dr. David Ley, would not be allowed to testify at the September 26, 2023 hearing. *See* Exhibit 3.

13. According to the Hearing Officer, Dr. Ley would not be allowed to testify because the CEEO had not interviewed him.

14. According to the Hearing Officer, however, Wesley Graham, Gwyneth Delmargo-Lewis, and Delia Bradley would be permitted to testify.

15. The implicit ruling here is that these three witnesses were interviewed by the CEEO.

16. But that is wrong.

17. The CEEO only interviewed Wesley Graham.

18. So, the Hearing Officer's refusal to allow Dr. Ley to testify would be – in ordinary tribunals – an abuse of discretion.

19. In this case, the Hearing Officer's ruling directly violated Title IX's rules. *See* 34 C.F.R. § 160.45 (b)(5) (ii) & (iii).

20. Likewise, it is anticipated that the CP will not testify in this case.

21. That is wildly problematic, because the failure of the CP to testify will deny Plaintiff Sheldon any means to assess her credibility at the September 26, 2023 hearing.

22. For instance, the CP sent Plaintiff Sheldon a Snapchat message the following morning.

23. In that message the CP thanked Plaintiff Sheldon for a wonderful time the night before.

24. Because the message was on Snapchat, it disappeared from Plaintiff Sheldon's phone.

25. That communication would completely undermine the CP's claim later that day that the sex she had with Plaintiff Sheldon had not been consensual.

26. Without the ability to cross examine the CP on this point, as well as other material lines of cross examination, Plaintiff Sheldon's risk of erroneous deprivation of his right to attend UNM is extraordinarily increased.

27. As discussed in the Complaint, should the CP decide not to testify in this case, Title IX's regulations should be fully enforced, including the portion of 34 C.F.R. § 160.45 (b)(6)(i) ("If a party or witness does not submit to cross-examination at the live hearing, the decision-maker(s) must not rely on any statement of that party or witness in reaching a determination regarding responsibility") barring any other statements the CP has made.

28. At this hearing, UNM will enforce the *Cardona* rule, a rule that rewards a CP who chooses not to testify in a Title IX hearing with the windfall of allowing all of her hearsay statements to come into evidence at the hearing without being subject to any impeachment.  *See* Exhibit 4.

29. Under Title IX rules "the burden of proof and the burden of gathering evidence sufficient to reach a determination regarding responsibility rest on [UNM] and not on the parties."  *See* 34 C.F.R. § 160.45 (b)(5)(i).

30. Yet, UNM has done nothing to collect impeachment evidence from the SANE nurse, from the CP, from Snapchat, or any of the other means of communication that the teenagers in this case use, like Instagram, to collect the CP's communications with Plaintiff Sheldon.

31. Under Title IX, university staff involved with assessing allegations of sexual assault must have sufficient education and training to make reasonable, lawful assessments of their responsibility, like testing the validity of a party's claims. *See* 34 C.F.R. § 160.45 (b)(1)(iii) (stating a "recipient must ensure that Title IX Coordinators, investigators, decision-makers, and any person who facilitates an informal resolution process, receive training on the definition of sexual harassment in § 106.30 the scope of the recipient's education program or activity, how to conduct an investigation and grievance process including hearings, appeals, and informal resolution processes, as applicable, and how to serve impartially, including by avoiding prejudgment of the facts at issue, conflicts of interest, and bias").

32. From the onset if this case, UNM's Title IX office has not demonstrated any ability to follow clearly published rules, much less approach this case with the impartiality or bias-free outlook required depriving a student of a fundamental property right – the right to obtain your degree from UNM.

**LEGAL STANDARD**

"A temporary restraining order is meant to preserve the status quo before a final decision on the merits. The status quo is defined as 'the last peaceable uncontested status existing between the parties before the dispute developed." *Miller v. Austin*, 622 F. Supp. 3d 1105, 1110 (D. Wyo. 2022) (internal citations and punctuation omitted).

To obtain a TRO, Plaintiff Sheldon must show (1) a likelihood of success on the merits; (2) a likelihood that [he] will suffer irreparable harm if the injunction is not granted; (3) the balance of equities is in [his] favor; and (4) the [temporary] injunction is in the public interest." *See Republican Party of N.M. v. King*, 741 F.3d 1089, 1092 (10th Cir. 2013). "The likelihood-of-success and irreparable-harm factors are 'the most critical' in the analysis." *See Legacy Church, Inc. v. Kunkel,* 455 F. Supp. 3d 1100, 1132 (D.N.M. 2020). See also Fed. R. Civ. P. 65.

## ARGUMENT

### *Plaintiff Sheldon has shown a likelihood of success on the merits.*

Plaintiff Sheldon has demonstrated a likelihood of success on the merits. In this case, Defendants proceeded to a formal disciplinary process without any valid formal complaint under Title IX. In addition, Defendants have demonstrated an inability to follow widely published and routine federal regulations governing formal grievance procedures, which is hard evidence of anti-male bias throughout UNM's Title IX office. Those two factors deprive UNM of jurisdiction to proceed in this matter. *See* 34 C.F.R. § 160.45 (a) (mandating UNM to follow "a grievance process that complies with § 160.45 *before the imposition of any disciplinary sanctions or other actions* that are not supportive measures as defined in § 160.30 against a respondent") (emphasis added).

### *Plaintiff Sheldon has shown irreparable harm.*

Despite having the burden to gather all evidence on the issue of consent, Defendants have focused solely on proving the lack of consent and have completely foregone any investigation into evidence that would demonstrate consent. More critically, Defendants are going to embark on a hearing where the CP will not have to

testify, and why should she when all her former statements can be used against Plaintiff Sheldon under the *Cardona* Rule? This was not the outcome *Cardona* sought to prevent and this Court should not condone it. Allowing the CP to avoid cross examination eviscerates the best means Plaintiff Sheldon has to demonstrate the CP's lack of credibility on the issue of consent. Given that UNM has not bothered to examine evidence of consent, like the CP's Snapchat messages the next day, and is affirmatively trying to hide evidence of consent (by not addressing the exculpatory witnesses in the Investigative Report and not requiring the CP to testify), the Court should find that Plaintiff Sheldon has a likelihood of success on his claims of anti-male bias outlined in his complaint.

This entire case been a due process and equal protection catastrophe. Given that UNM never acquired jurisdiction to proceed, it would impose irreparable harm to Plaintiff Sheldon for UNM to proceed hearing in CEEO Case #I-2022-6195 with the September 26, 2023. *See Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1012 (10th Cir. 2018) (stating that "a jury's monetary award for past conduct does not preclude a court from entering a permanent injunction against similar wrongful conduct that is likely to occur in the future"). In our Circuit, damages

> flowing from anticipated future injury to one's livelihood or business interests are especially difficult to calculate. We concluded as much in *Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351 (10th Cir. 1986), when we reversed the district court's denial of a preliminary injunction after observing that "[a] threat to trade or business viability may constitute irreparable harm."

*Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1012 (10th Cir. 2018). Here, Plaintiff Sheldon is in his final year of school at UNM. He is a Dean's List student.

Forcing him through the gauntlet of an unconstitutional proceeding so he can sue UNM later for an erroneous deprivation of his diploma at the conclusion of his senior year constitutes irreparable harm. An erroneous finding of responsibility for sexual assault will harm Plaintiff Sheldon for the rest of his life, especially when that finding is the product of a hearing infected with anti-male gender bias. A false finding of responsibility would affect Plaintiff Sheldon's reputation, his education future, career possibilities, future earnings, and emotional and physical well-being.

Defendants have already demonstrated that they care little about providing Plaintiff Sheldon with a fair hearing. Having deprived him of his right to review material evidence in the last hearing, they are now depriving Plaintiff Sheldon of his right to call a material exculpatory expert, Dr. Ley, to testify on September 26, 2023. The decision to prohibit Dr. Ley from testifying also violates Title IX. *See* 34 C.F.R. § 160.45 (b) (ii) (mandating that UNM provide "an equal opportunity for the parties to present witnesses, including fact and expert witnesses") & (iii) (mandating UNM to not "restrict the ability of either party . . . to gather and present relevant evidence"). *See Doe v. Texas Christian Univ.*, 601 F. Supp. 3d 78, 89 (N.D. Tex. 2022), *appeal dismissed*, No. 22-10505, 2023 WL 3568171 (5th Cir. Jan. 10, 2023) (granting a TRO against TCU in a Title IX case because an indicator of gender "bias is TCU's exclusion of exculpatory evidence in violation of its own policies and Title IX regulations").

Defendants can offer no valid reason for having prohibited Dr. Ley from testifying. As the district court noted in *Doe*, "TCU's argument that it may exclude evidence submitted after it has closed the 'investigation' ignores the plain text of the regulation: 'When investigating a formal complaint *and throughout the grievance*

11

*process*,' TCU must not 'restrict the ability of either party to ... gather and present relevant evidence.'" *Id.* (emphasis added). *Doe*, 601 F. Supp. 3d at 91. As the *Doe* court observed, irrational rulings like this provide stark evidence of gender bias. Of course, evidence of anti-male bias grows stronger when "procedural irregularities" pile up, as they have in this case. *Id*. at 88 (citing *Doe v. Regents of Univ. of Cal.*, 23 F.4th 930, 940 (9th Cir. 2022) (collecting cases)). As in *Doe*, Plaintiff Sheldon, having shown quite a few procedural irregularities, is entitled to a TRO so this Court can sort out the constitutional quagmire created by Defendants highly irregular Title IX process.

### *The balance of equities favors a TRO*

Plaintiff Sheldon, to his credit, has honored the CP's wishes and is studying abroad so she does not have to see him on UNM's campus. It bears noting that contrary to Sanchez's claim[4] to Plaintiff Sheldon's counsel that neither the CP nor UNM's policy would permit an informal resolution, the CP told the UNM Police:

> I really like, I mean, I don't want him to get arrested, really, I don't. I just don't want him to be on campus. That's all I'm asking, ya know. Like, I don't want to ruin his life. I just want him to be away from me forever. He can go do whatever. I just need a barrier. That's all I'm asking.

Under these circumstances, as in *Doe*, the balance of equities favors a TRO.

### *The Public has an interest in fair, conflict-free and bias-free Title IX hearings.*

The Public has a keen interest in eliminating sexual violence from college campuses. That is not in dispute. But equally important is the public's interest in having fair and conflict-free Title IX hearings and ensuring that such hearings are not embracing

---

[4] It goes without saying that Sanchez's misrepresentation of facts to Plaintiff Sheldon's counsel is yet another strong bit of evidence of anti-male bias in UNM's Title IX program. Especially here where the CP appeared to desire an informal resolution.

sex discrimination as a model for decision-making. The numerous procedural errors in this case, unfortunately, underscore a strong anti-male bias in UNM's Title IX program. This Court has an interest, as does the public, to investigate that problem now before additional harm is done to Plaintiff Sheldon or anyone else.

## Prayer for Relief

As Plaintiff Sheldon has shown (1) a likelihood of success on the merits, (2) irreparable harm to his education and future interests, (3) the balance of equities favoring the status quo, and (4) that the public interest will not be harmed by granting a TRO, the Court should enter an order staying all future proceedings in UNM's Title IX Case # I-2022-6195 and vacating the hearing currently set for September 26, 2023.

Respectfully Submitted,

ROTHSTEIN DONATELLI LLP

/s/ Marc Lowry

MARC M. LOWRY
MARGIE A. RUTLEDGE
500 4th St., NW Suite 400
Albuquerque, New Mexico 87102
505-243-1443

*Attorneys for Plaintiff Skyler Sheldon*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of July, 2023, I filed the foregoing using the CM/ECF system, which will electronically send notification of such filing to all counsel of record; given that counsel have not entered an appearance in this case, undersigned counsel has emailed a copy of the motion to Christine M. Landavazo with UNM's Office of University Counsel.

_____
Marc M. Lowry