**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

SKYLER SHELDON,

*Plaintiff*,

v. No. 1:23-cv-00813 KWR/KRS

THE UNIVERSITY OF NEW MEXICO, THE BOARD OF REGENTS OF THE UNIVERSITY OF NEW MEXICO, *in its official capacity*, MICHELLE SANCHEZ, *in her individual capacity*; ROBYN M. HILL, *in her individual capacity*, and DAVIS CROW, *in his individual capacity*,

*Defendants*.

**FIRST AMENDED COMPLAINT**

Plaintiff Skyler Sheldon, by and through undersigned counsel, files his First Amended Complaint against Defendants University of New Mexico and the University of New Mexico's Board of Regents (hereinafter collectively referred to as "UNM"), Michelle Sanchez, Robyn M. Hill, and Davis Crow. Plaintiff Sheldon sues UNM for violating Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681, *et seq*. ("Title IX"). Plaintiff Sheldon sues the individual Defendants in their individual capacities under 42 U.S.C. § 1983. In support of his First Amended Complaint, Plaintiff Sheldon states:

/ / /

/ / /

## INTRODUCTION

1. This case arises from UNM's gross mishandling of a Title IX disciplinary proceeding against Sheldon. Over more than four years, UNM subjected Sheldon to three separate formal Title IX hearings to determine if Sheldon had violated UNM's code of conduct. Each formal Title IX hearing was deeply flawed. Yet even after Sheldon pointed out the serious procedural defects affecting not only UNM's jurisdiction and authority to proceed with a formal investigation and Title IX hearing, but also the reliability of the Title IX proceedings themselves, UNM refused correct those core errors. Instead, UNM progressively exacerbated the procedural errors and even increased the proposed sanctions against Sheldon without adequate or meaningful explanation.

2. Sheldon challenges the way UNM initiated, investigated, adjudicated, and repeatedly revived the formal Title IX grievance process despite knowing all the while that UNM was clearly violating Title IX and its supporting regulatory framework. UNM continued to pursue its impermissible formal grievance process even after Sheldon filed a federal civil action in September 2023 alleging that UNM violated Title IX, due process of law, and discriminated against him on the basis of sex. *See* Complaint for Declaratory and Injunctive Relief (Doc. 1) (filed Sept. 21, 2023).

3. In the initial phases of Sheldon's Title IX adjudication, UNM's President twice concluded that the process used to hold Sheldon responsible for violating UNM's code of conduct was fundamentally deficient. In June 2023, President Garnett Stokes reversed and remanded UNM's first formal Title IX resolution because UNM failed to provide Sheldon with evidence fundamental to proving his compliance with UNM's code of conduct. In making that ruling, however, serious Title IX violations were left unaddressed. In July 2024, after Sheldon had filed a federal civil rights action case seeking to halt the impermissible formal Title IX grievance proceedings, President Stokes reversed the second formal Title IX ruling against Sheldon because the Complainant did

not participate in the hearing thereby depriving Sheldon of any opportunity to question her about the disputed facts of the case and her credibility.

4. Despite President Stokes' second reversal, the Board of Regents reviewed the case and ordered Sheldon to undergo a third formal Title IX hearing with de novo review. The Board of Regents ignored the multitude of procedural violations that, under Title IX, barred any formal investigation or hearing at all. Instead, the Board of Regents remanded the case for a third, external, Hearing Officer to review the matter "de novo," but instructed that Hearing Officer not to consider any of the procedural defects that the Board of Regents had ignored.

5. On remand for the third formal Title IX hearing, the third Hearing Officer refused to consider Sheldon's procedural arguments addressing his right to avoid a third formal Title IX hearing. The third Hearing Officer also denied Sheldon his right to present material evidence supporting his compliance with UNM's code of conduct. On April 13, 2026, after another formal Title IX hearing had been wrongly convened, the third Hearing Officer, once again, determined that Sheldon had violated UNM's code of conduct. Not surprisingly, UNM expelled Sheldon and banished him from campus. On June 26, 2026, President Stokes reversed that determination because Sheldon had again been unable to question the Complainant and other material witnesses at the hearing.

6. UNM's repeated procedural failures in this case occurred after UNM had already been placed on notice by the United States Department of Justice that UNM's Title IX system suffered from fundamental deficiencies involving evidence gathering, impartiality, reliability, proper training, delay, and a flawed appellate process.

7. UNM's unfair treatment of Sheldon as a male Respondent, including UNM's refusal to acknowledge the repeated procedural irregularities that discriminated against him, was motivated by sex. Sheldon further alleges that after he complained about his sex discrimination and the fundamentally flawed Title IX procedures in his federal civil rights case in September of 2023,

UNM retaliated against him by escalating the hostility toward him by preventing the third Hearing Officer from exercising independent oversight of the formal Title IX grievance process, instructing the third Hearing Officer not to consider the multitude of procedural errors that prohibited convening a formal Title IX hearing or the imposition of any discipline whatsoever, and then increasing the severity of his discipline. UNM's overt retaliation subjected Sheldon to unwarranted anxiety, stress, legal fees, and an unjustified third formal Title IX hearing that included impermissible disciplinary actions, and another unwarranted appeal.

**PARTIES**

8. Skyler Sheldon was a student at UNM when UNM initiated formal Title IX grievance proceedings against him. As a result of those proceedings, Sheldon left UNM and continued his undergraduate education in Europe.

9. Defendant University of New Mexico is a public educational institution under Article XII, § 11 of the New Mexico Constitution. UNM accepts federal financial assistance thereby consenting to jurisdiction under Title IX.

10. Defendant Board of Regents is the governing body of UNM. The Board has general supervisory control over all the actions of its employees, officers, and agents acting on the UNM's behalf and is the body that is to be sued on behalf of UNM. NMSA 1978, §§ 21-7-3 & -4 (1987).

11. Defendant Michelle Sanchez was, at all relevant times, an employee at UNM's Office of Compliance, Ethics & Equal Opportunity ("CEEO") as a compliance manager. Sanchez was directly involved and wrongly initiated formal investigation and administration of the Title IX proceedings against Sheldon. Sanchez communicated with the Complainant, knew that the Complainant never filed a formal complaint, and interviewed at least one material witness without alerting Sheldon, communicated with Sheldon and his counsel about the grievance process, and

participated in the collection of evidence, the drafting of the Investigative Reports, and disclosure of those reports and evidence. Sanchez is sued in her individual capacity under 42 U.S.C. § 1983.

12. Defendant Robyn M. Hill was the UNM Administrative Hearing Officer assigned to Sheldon's second formal Title IX hearing. Hill exercised authority over the hearing, including the admission of witnesses and evidence, and made rulings that deprived Sheldon of his right to avoid the formal grievance process as well as his ability to present a meaningful defense. Hill is sued in her individual capacity under 42 U.S.C. § 1983.

13. Defendant Davis Crow was the UNM Hearing Officer assigned to UNM's third formal Title IX hearing. Crow exercised authority over the hearing, including the admission of witnesses and evidence, and made rulings that deprived Sheldon of his right to avoid the formal grievance process as well as his ability to present a meaningful defense. Crow is sued in his individual capacity under 42 U.S.C. § 1983.

14. At all relevant times Sanchez, Hill, and Crow acted under color of state law.

## JURISDICTION AND VENUE

15. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 & 1343 because Sheldon's claims arise under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 et seq., and 42 U.S.C. § 1983.

16. Venue is proper in the District of New Mexico under 28 U.S.C. § 1391(b) because UNM resides in this federal judicial district and a majority of the events giving rise to Sheldon's claims occurred here.

## FACTUAL ALLEGATIONS

### I. The Consensual Encounter

17. UNM's Title IX adjudication arose from a consensual encounter between Sheldon and the Complainant that occurred on April 24–25, 2021.

18. Most of the sexual interactions between the Complainant and Sheldon were witnessed by friends who observed the Complainant and noted that she was not incapacitated or otherwise unable to consent.

19. The Complainant initiated the encounter with Sheldon.

20. At a party on April 24, the Complainant asked to spend the night at Sheldon's dorm because she did not want to go back to her apartment due to her neighborhood being sketchy.

21. As the party was ending, the Complainant directed Sheldon to her designated driver's car, who, at the Complainant's request, drove them to Sheldon's dorm.

22. The Complainant did not ride in the empty front passenger's seat of the car beside the designated driver; she rode in the back seat of the car next to Sheldon.

23. During the car ride to Sheldon's dorm, the Complainant voluntarily provided oral sex to Sheldon.

24. When getting out of the car at the dorm, the Complainant apologized to her designated driver for having sex in the back seat of the car.

25. Over the course of the evening inside the dorm, the Complainant and Sheldon engaged in consensual sex acts.

26. After returning home the next day, the Complainant messaged Sheldon via Snapchat thanking him for the wonderful evening she had.

27. Later that day, a friend of the Complainant convinced the Complainant that she had been raped and that the Complainant needed to go to the SANE clinic.

28. At the SANE clinic, the Complainant informed the SANE nurse that she had sex with only one other person aside from Sheldon and Sheldon's roommate, Wesley Graham.

29. DNA testing of the swabs taken by the SANE nurse, however, failed to reveal any DNA from either Sheldon, his roommate or the other male partner the Complainant had identified.

30. The DNA analysis, however, did reveal DNA from at least two other unidentified males.

## II. The Title IX Complaint and Investigation

31. Nearly a year later, on March 4, 2022, Complainant was departing a class and talking with a female classmate who described Sheldon as a good-looking.

32. That conversation caused Complainant to reach out to Dr. Stephen L. Bishop, Director of the International Studies Institute at UNM.

33. Complainant informed Dr. Bishop that Sheldon had sexually assaulted her.

34. Bishop, a mandatory reporter, relayed Complainant's allegations to Angela Catena, the Title IX Coordinator at UNM.

35. On March 4, 2022, at Ms. Catena's request, Michelle Sanchez, UNM's Title IX compliance manager, contacted the Complainant about Professor Bishop's email, and began explaining UNM's Title IX procedures to the Complainant.

36. Despite UNM's outreach and follow up, the Complainant refused to file a formal complaint with UNM's Title IX Office, an event that was necessary to initiate a formal Title IX grievance investigation into her allegation.

37. On March 21, 2022, the Complainant's mother admitted that the Complainant had not filed a formal complaint under Title IX.

38. On March 30, 2022, UNM's Title IX Coordinator decided that if the Complainant did not tender a formal complaint to UNM, UNM's Title IX office should close her file.

39. On May 3, 2022, Women's Resource Center Advocate/Director Aine McCarthy informed UNM's Title IX office via email that the Complainant did not wish to participate in UNM's formal Title IX process or be contacted by UNM's Title IX office anymore.

40. The Complainant never tendered a formal complaint or requested that UNM initiate a formal Title IX investigation.

41. Under Title IX, if a complainant does not submit a formal complaint, the only other person authorized to initiate a formal investigation is UNM's Title IX coordinator. 34 C.F.R. § 106.30(a) (defining a "Formal Complaint").[1]

42. UNM's Title IX coordinator never issued a formal complaint.

43. UNM has never produced a Formal Complaint: i.e., a document "signed by the Title IX coordinator alleging sexual harassment against a respondent and requesting that the recipient investigate the allegation of sexual harassment." *Id*.

44. Without a formal complaint, UNM's Title IX program was not authorized to formally investigate an allegation of sexual assault. *See* 34 C.F.R.§§ 106.44 (a) & (b)(1); 106.45 (b)(1)(i).

45. Without a formal complaint, UNM's Title IX program was not authorized to conduct a formal Title IX hearing addressing the Complainant's allegation. *See* 34 C.F.R.§§ 106.44 (a) & (b)(1); 106.45 (b)(1)(i)

46. Without a formal complaint, UNM's Title IX program was not authorized to discipline Sheldon in any way, other than to offer Sheldon supportive measures. *See* 34 C.F.R.§§ 106.44 (a) & (b)(1); 106.45 (b)(1)(i).

---

[1] All references to the Code of Federal Regulations in the Amended Complaint address the regulations governing this case that were in effect on March 4, 2022.

47. In fact, unless UNM followed all the Title IX regulations imposed by the United States Department of Education to govern Title IX's grievance process, federal law prohibited UNM from holding a formal Title IX hearing or imposing any disciplinary action whatsoever. *See* 34 C.F.R.§§ 106.44 (a) & (b)(1); 106.45 (b)(1)(i).

48. Despite lacking a formal complaint, and despite UNM's refusal to abide by the Department of Education's Title IX regulations governing grievance process, UNM held multiple formal Title IX hearings and repeatedly attempted to impose unlawful discipline against Sheldon.

49. Sheldon repeatedly challenged UNM's authority to proceed in the absence of a formal complaint and full compliance with the regulations governing the Title IX grievance process.

50. To date, UNM has refused to assess or address a single objection Sheldon has made about UNM's non-conformity with Title IX, despite having raised them in his federal civil rights act case against UNM as early as 2023.

51. On July 20, 2022, UNM's CEEO employee Michelle Sanchez notified Sheldon about Complainant's allegations over a year after their encounter.

52. Sending Sheldon a notice of allegations without first acquiring a formal complaint "may constitute discrimination on the basis of sex under Title IX." *See* 34 C.F.R. § 106.45(a).

53. Under Title IX, a formal complaint about a sexual assault typically should be filed within 180 days of the incident to be considered timely.

54. On July 20, 2026, Michelle Sanchez informed Sheldon that her "email serves as notice that CEEO has accepted jurisdiction of the Formal Complaint filed with our office on March 4, 2022."

55. UNM never received a Formal Complaint on March 4, 2022.

56. UNM also told Sheldon that based on the March 4, 2022, Formal Complaint, the "CEEO is proceeding with a formal investigation."

57. If UNM believed it had received a Formal Complaint on March 4, 2022, UNM had a mandatory duty to immediately notify Sheldon about those allegations under Title IX law. *See* 34 C.F.R. § 106.45(b)(2)(i) ("Upon receipt of a formal complaint, a recipient must provide the following written notice to the parties who are known . . . .").

58. Yet, UNM failed to provide Sheldon with written notice of the allegations in March of 2022.

59. Compounding the problem of untimely notice, UNM's CEEO employees failed to notify Sheldon during the spring of 2022 that Complainant had requested that UNM not inform Sheldon about her allegation until Complainant returned from Europe that summer.

60. Under Title IX, UNM had an affirmative obligation to promptly resolve any Title IX complaint. *See* 34 C.F.R. § 106.45(b)(1)(v).

61. Given UNM's obligation to promptly resolve the complaint, UNM had a duty to inform Sheldon that Complainant had requested a substantial delay in the case. *See* 34 C.F.R. § 106.45(b)(1)(v) (obligating UNM to provide notice to Sheldon about any delay as well as the reasons for the delay).

62. UNM did not alert Sheldon about Complainant's request to delay a prompt resolution of the case, which under the Title IX law barred both a formal hearing as well as the imposition of any discipline.

63. Under Title IX, when advising Sheldon about the allegations, UNM had an affirmative obligation to inform him—in the very first written communication about the case—about UNM's grievance process. *See* 34 C.F.R. § 106.45 (b)(2)(i)(A).

64. UNM failed to alert Sheldon about UNM's grievance process in direct violation of Title IX. *Id.*

### III. First Hearing and First Appeal

65. UNM's first formal Title IX hearing relied substantially on witness interviews conducted and video recorded by the University of New Mexico Police Department ("UNMPD").

66. Despite Sheldon having requested UNM's recorded witness interviews by UNMPD, UNM and Michelle Sanchez refused to produce those recorded interviews to Sheldon so he could prepare his defense.

67. UNM's failure to produce those recordings crippled Sheldon's ability to defend himself against Complainant's allegation by limiting his ability to evaluate the witnesses' statements, the context of those statements, their inconsistencies, and the credibility of each UNMPD witness.

68. Michelle Sanchez drafted the first Investigative Report addressing UNM's formal Title IX investigation.

69. Michelle Sanchez's Investigative Report wrongly concluded that Professor Bishop's March 4, 2022, email constituted a formal complaint.

70. A cursory review of Professor Bishop's email reveals it was not a formal complaint under Title IX. *See* 34 C.F.R. § 106.30(a) (defining a "Formal Complaint").

71. Michelle Sanchez, having wrongly concluded a formal complaint had been filed in the case, unilaterally proceeded with a formal investigation that was unauthorized under Title IX. *See* 34 C.F.R.§§ 106.44 (a) & (b)(1); 106.45 (b)(1)(i).

72. Michelle Sanchez's unauthorized Investigative Report would become the controlling document for the first Hearing Officer to consider.

73. The parties agreed that the first formal Title IX hearing would proceed on the paperwork submitted by the parties, rather than holding an evidentiary hearing.

74. On February 23, 2023, the first Hearing Officer Elizabeth Williams found Sheldon responsible for violating UNM Administrative Policy 2740 and the Student Code of Conduct.

75. UNM imposed sanctions that included expulsion, a prohibition on applying for readmission to UNM for two years, a campus ban for a minimum of two years, counseling, and a reflection paper.

76. UNM's sanctioning decision was based on the inaccurate statement that Sheldon was "already on Disciplinary Probation," when he was not.

77. On March 2, 2023, Sheldon appealed that responsibility determination. Among other issues, Sheldon challenged UNM's failure to provide material evidence and noted deficiencies in the investigation.

78. On June 12, 2023, President Stokes reversed the first responsibility determination and remanded the matter for a new formal hearing.

79. President Stokes found significant procedural errors surrounding UNM's failure to disclose to Sheldon the recordings of UNMPD's witness interviews that were material to his defense.

80. President Stokes directed UNM's CEEO to "reopen" the investigation, obtain and provide the recordings, allow the parties sufficient time to review and respond to that evidence, and then conduct a second formal Title IX hearing.

81. Despite that direction, on July 17, 2023, UNM's CEEO employee Michelle Sanchez provided an Amended Investigative Report and certain recordings to Sheldon but informed Sheldon "the investigation is considered closed."

82. Michelle Sanchez, therefore, did not actually reopen the investigation so Sheldon could provide evidentiary input and feedback as the President directed.

83. Sheldon identified additional evidence and witnesses that he contended should be investigated or considered by UNM's Title IX Office.

84. UNM did not meaningfully pursue that evidence and did not cure all the evidence-access problems Sheldon identified.

85. On September 14, 2023, Hearing Officer Zinke denied Sheldon's request to present evidence, including a psychological expert, Dr. David Ley.

86. In making his ruling, Hearing Officer Zinke stated that only witnesses that the "CEEO interviewed" could testify.

87. Tellingly, the CEEO had only interviewed a single witness, Wesley Graham, who provided testimony favorable to Sheldon.

88. The three witnesses that Hearing Officer Zinke determined could testify were the Complainant, her friend Gwen Delmargo-Lewis (the designated driver who drove the couple to the dorm), and Wesley Graham (Sheldon's suitemate).

89. The first two of those three witnesses were never interviewed by UNM's CEEO office.

90. If Hearing Officer Zinke's ruling on witnesses was consistently applied to both parties, the only witness who would qualify to testify would have been Wesley Graham.

91. Hearing Officer Zinke's ruling discriminated against Sheldon on the basis of his sex.

**IV. Plaintiff Files this Action**

92. On September 21, 2023, Sheldon filed a federal civil rights action against UNM seeking to halt UNM's second formal Title IX hearing because UNM had failed to comply with Title IX's statutory and regulatory requirements in addition to basic due process and equal protection principles.

93. Sheldon alleged, among other things, that UNM's Title IX grievance process had discriminated against him on the basis of his sex, violated equal protection of the laws, violated due process of law, and violated Title IX's mandatory rules.

94. By filing his lawsuit, Sheldon placed UNM on notice about his complaints of sex discrimination, invoking his rights under Title IX, the federal due process clause of the Fourteenth Amendment and equal protection principles.

95. In 2023, however, the District Court presiding over Sheldon's civil rights case declined to halt UNM's formal Title IX hearing and stayed the federal civil rights case without resolving any of Sheldon's claims.

## V. The Second Formal Title IX Hearing and Second Appeal

96. After Sheldon filed his federal case, Hearing Officer Zinke conflicted himself out of the case and Hearing Officer Robyn M. Hill took over UNM's Title IX case.

97. On November 17, 2023, Hearing Officer Hill held a prehearing conference with Sheldon's advisor.

98. On November 26, 2023, Hearing Officer Hill refused to halt the proceeding due to the lack of a formal complaint and other procedural irregularities, excluded Sheldon's proposed witnesses and declined to order additional case materials produced, like Complainant's cell phone videos, photographs, and text messages.

99. Hearing Officer Hill's exclusion of Sheldon's proposed evidence was contrary to Title IX regulation 34 C.F.R. § 106.45(b)(5)(iii), which instructs UNM not to "restrict the ability of either party to discuss the allegations under investigation or to gather and present relevant evidence."

100. On November 29, 2023, Hearing Officer Hill presided over the second formal Title IX hearing.

101. The Complainant did not appear or subject herself to any questioning or cross examination by Sheldon's advisor or the Hearing Officer Hill.

102. Nor did any other witness testify.

103. Despite the Complainant's absence, and the lack of any live witness testimony, Hearing Officer Hill once again found Sheldon responsible of violating University Administrative Policy § 2740 and UNM Student Code of Conduct §§ 2.1 & 2.2.

104. UNM, via the Dean of Students Office, imposed discipline in the form of a permanent expulsion and an indefinite ban of Sheldon from campus.

105. UNM increased the campus ban and expulsion sanction from the finite two-year timeframe imposed after the first adjudication to an indefinite period of time, without any explanation as to why the severity of sanctions increased.

106. Once again, Sheldon appealed the outcome of the second formal Title IX hearing and discipline, rearguing and repeating the same procedural and constitutional defects that Sheldon had outlined in his federal civil rights complaint as well as others.

107. The appeal challenged, among other things, the absence of a formal complaint; UNM's failure to reopen the investigation as ordered; the exclusion of evidence and the failure to collect exculpatory evidence; the lack of notice concerning UNM's investigative interviews; Sheldon's inability to question the Complainant at the formal hearing; and the increased sanctions without explanation.

108. On July 1, 2024, President Stokes noted the many procedural irregularities Sheldon raised but only addressed one: Sheldon's inability to cross-examine the Complainant and other hostile witnesses at any stage of UNM's Title IX investigation.

109. According to President Stokes, UNM's failure to provide meaningful adversarial testing of the Complainant's statement to UNMPD prevented the Title IX Hearing Officer from gathering sufficient evidence to sustain her allegations.

110. President stokes once again reversed the second responsibility determination against Sheldon and dismissed the case.

### VI. The Board of Regents Orders a Third Hearing

111. Complainant appealed President Stoke's decision to UNM's Board of Regents.

112. On July 17, 2024, Sheldon argued to the Board of Regents that the Board of Regents could overrule President Stokes dismissal only if the Board of Regents determined that UNM could overcome all of UNM's Title IX regulatory defects, including:

| | | |
|---|---|---|
| 1. | 34 C.F.R. § 106.45 (b) | (lack of a formal complaint); |
| 2. | 34 C.F.R. § 106.45 (b)(1)(ii) | (lack of objective evaluation of the evidence); |
| 3. | 34 C.F.R. § 106.45 (b)(1)(v) | (lack of timely notice); |
| 4. | 34 C.F.R. § 106.45 (b)(2) | (lack of adequate notice); |
| 5. | 34 C.F.R. § 106.45 (b)(5)(i) | (failure to gather evidence sufficient to determine responsibility); |
| 6. | 34 C.F.R. § 106.45 (b)(5)(ii) | (preventing Respondent Sheldon from calling witnesses); and |
| 7. | 34 C.F.R. § 106.45 (b)(5)(v) | (preventing Respondent Sheldon's participating in the investigation). |

113. On October 28, 2024, despite Sheldon's arguments, UNM's Board of Regents reversed the President's dismissal. The Board concluded that the Complainant had not received sufficient notice that her failure to participate in the November 2023 hearing could affect her credibility or the ultimate determination.

114. The Board of Regents declined to address any of the Title IX defects Sheldon raised, many of which were addressed in his 2023 federal civil rights case.

115. Rather than remanding the case to the President to decide if any of the unresolved Title IX procedural violations raised in Sheldon's second appeal barred a third formal Title IX hearing, or

doing so themselves, UNM's Board of Regents retaliated against Sheldon by ordering a third formal Title IX hearing.

116. The Board of Regents ordered a third formal Title IX hearing while fully understanding that any one of the regulatory errors raised by Sheldon deprived UNM of the ability to either hold a formal Title IX hearing or impose any discipline on Sheldon. *See* 34 C.F.R. §§ 106.44(a) and (b)(1) & 106.45(b)(1)(i).

117. On November 1, 2024, Sheldon implored the Board to reconsider its decision. Sheldon explained that because further appellate review was required, the appropriate ruling was to return the matter to the President to resolve the remaining procedural defects raised by Sheldon on appeal.

118. The Board ignored Sheldon's arguments, forcing Sheldon to undergo a third formal Title IX hearing without resolving any of the Title IX deficiencies that prohibited UNM from holding such a hearing.

**VII. Third Hearing and Third Appeal**

119. UNM retained Hearing Officer Davis Crow of Grand River Solutions to conduct the third formal Title IX hearing.

120. By that time, additional forensic evidence had become available to Sheldon. DNA testing associated with the SANE sexual-assault examination identified two unidentified male DNA sources and *excluded* Sheldon and the other individuals Complainant had identified as her sexual partners as the source of the DNA.

121. That evidence showed that Complainant had misled the SANE nurse about her sexual activities, and by extension, the Hearing Officers as well.

122. The DNA evidence materially undermined the Complainant's allegations and required a full reassessment of the evidentiary record.

123. On January 16, 2025, well before the third formal Title IX hearing, Sheldon argued to the third Hearing Officer that he needed to resolve the case's procedural and regulatory defects listed above in § VI to establish the Hearing Officer's authority to move forward with a third formal Title IX hearing, including:

1. 34 C.F.R. § 106.45 (b) (lack of a formal complaint);
2. 34 C.F.R. § 106.45 (b)(1)(ii) (lack of objective evaluation of the evidence);
3. 34 C.F.R. § 106.45 (b)(1)(v) (lack of timely notice);
4. 34 C.F.R. § 106.45 (b)(2) (lack of adequate notice);
5. 34 C.F.R. § 106.45 (b)(5)(i) (failure to gather evidence sufficient to determine responsibility);
6. 34 C.F.R. § 106.45 (b)(5)(ii) (preventing Respondent Sheldon from calling witnesses); and
7. 34 C.F.R. § 106.45 (b)(5)(v) (preventing Respondent Sheldon's participating in the investigation).

124. In this manner, before the third formal Title IX hearing began, Sheldon again placed UNM and Hearing Officer Crow on notice that numerous procedural and regulatory defects remained unresolved and requested that those threshold defects be adjudicated so Sheldon could avoid the third formal Title IX hearing, as the Title IX regulatory framework demanded.

125. Hearing Officer Crow, however, informed Sheldon that UNM had not authorized him to resolve Sheldon's procedural issues.

126. As a result, UNM proceeded with a third formal Title IX hearing while the procedural defects Sheldon had repeatedly raised—including defects that predated and eliminated UNM's authority to conduct any formal Title IX hearing—remained unresolved.

127. If, as Hearing Officer Crow represented, UNM deliberately limited his authority so that he could determine Sheldon's responsibility but could not adjudicate whether the process leading up to that determination barred such a hearing from taking place, UNM deliberately and knowingly structured the third proceeding to prevent Sheldon from obtaining a resolution to the procedural objections he had been raising since 2023.

128. That limitation is significant given that UNM had already subjected Sheldon to two responsibility determinations, and Sheldon had specifically placed UNM on notice about how UNM's unresolved procedural defects eliminated UNM's authority to hold a third formal Title IX hearing.

129. In retaliation, UNM forced Sheldon to undergo the third merits adjudication without resolving the procedural defects Sheldon raised and without any clear pathway to have them resolved.

130. In October of 2025, Sheldon again raised the procedural defects that had remained unresolved from the onset of this investigation.

131. Sheldon again argued that without a formal complaint, UNM lacked jurisdiction to initiate or pursue any Title IX proceedings.

132. Without resolving those procedural defects, Hearing Officer Crow proceeded with the formal Title IX hearing and once again held Sheldon responsible for violating UNM's code of conduct.

133. If, however, Hearing Officer Crow was mistaken and UNM had authorized him to adjudicate the procedural objections Sheldon had raised, as part of his de novo review, his refusal to do so demonstrates an abject failure on his part to adhere to Title IX's statutory and regulatory framework.

134. It would also demonstrate UNM's failure to ensure that Hearing Officer Crow was adequately educated and trained to preside over Title IX grievance cases so the process would conform to Title IX's requirements.

135. Sheldon sought to have material witnesses and evidence presented at the third formal Title IX hearing that would support Sheldon's defense.

136. Hearing Officer Crow, once again, excluded that evidence contrary to 34 C.F.R. § 106.45(b)(5)(iii).

137. According to UNM, the purpose of the third formal Title IX hearing was to ensure that Complainant understood that her refusal to submit to cross-examination could, from a constitutional due process perspective, prevent the Hearing Officer from gathering sufficient evidence to sustain her allegations.

138. Despite being made aware of that information, Complainant, once again, refused to appear at UNM's third formal Title IX hearing.

139. UNM also failed to secure the appearance of other material witnesses, including Gwen Delmargo-Lewis (the designated driver on the day of the consensual encounter) and the UNMPD detective who investigated the case.

140. In rendering his decision after the third formal Title IX hearing, Hearing Officer Crow explicitly stated that the "procedural violations from the investigation process . . . are not within the Hearing Officer's purview to address and are not elaborated upon here."

141. Despite stating he could not address the procedural violations Sheldon raised, Hearing Officer Crow determined that UNM *had* jurisdiction, noting in his decision that "Complainant files Formal Complaint by email" on April 27, 2022.

142. Complainant, however, did not author any email to UNM's Title IX Office on April 27, 2022, and no email from that date contains Complainant's "physical or digital signature," which is indispensable for a formal complaint.

143. Accordingly, the Hearing Officer's finding that a Formal Complaint had been made is blatantly false. *See* 34 C.F.R. § 106.30(a) (defining a formal complaint).

144. Tellingly, the Hearing Officer's claim is at odds with UNM's July 20, 2022, Notice of Allegations stating that the Formal Complaint had been filed on March 4, 2022.

145. Hearing Officer Crow's refusal to fairly, impartially, and independently address the procedural defects raised by Sheldon, defects that deprived UNM of any authority to proceed to a formal hearing, demonstrates either incompetence on Defendant Crow's part, a conflict of interest, institutional bias against Sheldon, and/or retaliatory animus.

146. On April 14, 2026, Hearing Officer Crow again found Sheldon responsible for violating UNM's code of conduct.

147. Hearing Officer Crow also announced UNM's sanctions: expulsion and permanently barring Sheldon from campus.

148. Hearing Officer Crow did not address the Complainant's misrepresentations and omissions to the SANE nurse shown through the DNA testing or why, if Complainant had been telling the truth, Wesley Graham was not included in the Title IX adjudication since Complainant claimed that Graham had non-consensual sex with her as well.

149. Sheldon again appealed.

150. Sheldon raised all his procedural defects once again on appeal, noting that despite having raised those objections for years UNM had not once resolved any of his claims addressing UNM's lack of authority (1) to engage in a formal Title IX investigation, (2) proceed to a formal hearing or (3) impose any discipline or sanction.

151. On June 26, 2026, President Stokes granted Sheldon's appeal, reversing the third responsibility determination without remand.

152. President Stokes again concluded that Sheldon's inability to cross-examine the Complainant and other material witnesses prevented a sufficiently reliable adjudication.

153. President Stokes, once again, never resolved Sheldon's procedural arguments that a formal Title IX investigation or hearing had never been authorized under Title IX.

154. All told, UNM subjected Sheldon to three separate formal Title IX hearings over the span of four years without addressing the procedural defects that barred UNM from undertaking a formal investigation or holding a formal hearing in the first instance.

155. UNM's conduct, as well as the conduct of UNM's employees and agents, violated Sheldon's right to Title IX protections, due process of law, and equal protection of the law.

### VIII. DOJ's Prior Findings Concerning UNM's Title IX Process

156. Before the proceedings against Sheldon began, the United States Department of Justice had investigated UNM's handling of sexual-harassment and sexual-assault complaints under Title IX.

157. On April 22, 2016, DOJ issued a findings letter concluding that UNM's grievance procedures, both as written and as implemented during the period DOJ reviewed, failed to ensure the prompt and equitable resolution required by Title IX. *See Title IX and Title IV Investigation of University of New Mexico*, Letter from U.S. Dep't of Justice to UNM President Robert G. Frank, Office of the President (dated April 22, 2026) ("DOJ Letter").

158. DOJ explained that an adequate Title IX grievance procedure must provide, among other things, an adequate, reliable, and impartial investigation; an opportunity for the complainant and respondent to present witnesses and other evidence; designated and prompt timeframes; and written notice of the outcome.

159. DOJ found that UNM's then-existing grievance procedure did not provide an adequate, prompt, and effective means of responding to sexual harassment complaints.

160. DOJ reported that students, parents, faculty, complainants, respondents, and witnesses complained of lengthy investigations, lack of communication, inaccurate information concerning the process and appeals, and delays in investigations and discipline.

161. DOJ also found that UNM's employees had received intermittent and inconsistent training concerning sexual harassment investigations and adjudications.

162. DOJ concluded that these deficiencies resulted in "inadequate, unreliable and potentially biased investigations and resolutions," including inconsistent and unreliable credibility determinations. DOJ Letter at 15.

163. DOJ separately identified a "Lack of Procedures to Ensure Impartiality." DOJ Letter at 22.

164. Among other things, DOJ found instances in which high-level administrative offices pressured UNM's Office of Equal Opportunity ("OEO") concerning investigations and found that OEO's then-existing reporting relationship with University Counsel created a conflict between OEO's role in eliminating and redressing harassment and University Counsel's role in limiting UNM's liability.

165. DOJ further found that OEO often received and sometimes relied upon UNMPD investigations in Title IX matters, but that UNMPD officers had received inconsistent and intermittent training regarding sexual-assault investigations.

166. DOJ found that the resulting investigations could be incomplete and could leave both complainants and respondents confused and alienated from UNM's Title IX process.

167. DOJ also found that UNM's investigations often took too long and that material evidence could be lost or overlooked during delay.

168. DOJ specifically noted that UNM's grievance procedure lacked timelines for appeals, which could result in months of additional delay and leave both complainants and respondents waiting, without communication, regarding the final outcome of their case.

169. DOJ ultimately directed UNM to revise its policies, procedures, and investigative practices to ensure prompt and equitable resolution of sexual-harassment allegations; adequately investigate allegations and retaliation; and ensure that the individuals responsible for handling Title IX cases received adequate training.

170. The DOJ's conclusions placed UNM on notice about the need for reliable and impartial investigations, proper evidence gathering, trained decisionmakers, effective appellate procedures, and prompt resolution of Title IX matters.

171. Despite that notice and DOJ's directive to UNM to improve its Title IX policies and procedures, Sheldon's case involved many of the same categories of procedural problems: withheld evidence; the failure to collect electronic evidence associated with cell phones like photographs, videos, and texts; the failure to meaningfully reopen an investigation after the President ordered UNM to do so; restrictions on witnesses and evidence; making credibility determinations without the opportunity to cross-examine the Complainant; not resolving procedural objections; and a disciplinary process that continued for more than four years.

## IX. Plaintiff's Injuries

172. UNM's actions severely disrupted Sheldon's education and constructively prevented him from continuing his education at UNM, receiving his lottery scholarship, and other benefits of his UNM enrollment while UNM unfairly and improperly held formal Title IX hearings and imposed discipline and sanctions against him.

173. Sheldon lost his scholarship and other educational benefits, incurred unanticipated tuition and education-related expenses after leaving UNM, lost or delayed his academic progress, and suffered profound emotional distress as a result of UNM's sexual discrimination and retaliatory conduct.

174. In addition, Sheldon incurred attorney's fees and expenses in defending himself against UNM's and UNM's employees and agents' wrongful conduct.

175. The fact that Sheldon ultimately prevailed in his administrative Title IX case cannot undo the years of emotional distress, the impact UNM's extended, wrongful adjudication had on his educational career, and the economic loss that accruing attorney's fees and expenses caused.

176. To the extent UNM's records may continue to reflect reversed findings, sanctions, or other adverse disciplinary notations, Sheldon continues to suffer injury and seeks appropriate correction or expungement.

**COUNT I**

**Violation of Title IX of the Education Amendments of 1972**

**(Defendants UNM & Board of Regents)**

177. Sheldon incorporates the preceding paragraphs as if fully set forth herein.

178. Title IX of the Education Amendments of 1972 mandates that: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

179. UNM, as a state public university, receives substantial federal funding annually.

180. UNM and the Board of Regents subjected Sheldon to a disciplinary process marked by repeated and material procedural violations that consistently operated to his disadvantage as a male Respondent.

181. In its mishandling of the Title IX grievance process in this case, UNM and the Board of Regents repeatedly misapplied or ignored binding Title IX law including Title IX's mandatory regulatory framework.

182. A grievance process "lacking principles of due process risks bias that in the context of sexual harassment allegations is likely to involve bias based on stereotypes and generalizations on the basis of sex." *Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 85 Fed. Reg. 30026, 30101 (May 19, 2020).

183. Both the Department of Education and the Department of Justice have promulgated regulations under Title IX that require a recipient school to "adopt and publish grievance procedures" that provide for the "prompt and equitable resolution" of complaints made by students or employees "alleging any action that would be prohibited by these Title IX regulations." 34 C.F.R. § 106.8(c) (2021); 28 C.F.R. § 54.135(b).

184. As a nonexclusive list of the procedural shortcomings in this case:

a. UNM initiated and pursued formal disciplinary proceedings without having a formal complaint to properly trigger a formal investigation or formal disciplinary hearing on the alleged sexual misconduct. Without a formal complaint, UNM had no lawful authority to investigate or sanction Sheldon;

b. UNM failed to provide Sheldon with timely and adequate notice of the allegations and grievance process;

c. UNM failed to provide Sheldon with timely and adequate notice about the delay and the justification for the delay associated with Complainant's desire to travel to Europe in the summer of 2022;

d. UNM's investigation was incomplete, inadequate, and one-sided in favor of the female Complainant against the male Respondent, and thus improper;

e. UNM's CEEO employees failed to collect or address relevant exculpatory evidence, including photographs, videos, and text messages, and failed to interview material witnesses;

f. UNM relied substantially on witness interviews conducted by UNMPD but failed to provide Sheldon with the recordings of those interviews before the first adjudication or an opportunity to attend the UNMPD interviews or question those witnesses afterward;

g. Sheldon was prohibited from presenting lay and expert testimony and other exculpatory documentary evidence;

h. UNM failed to provide Sheldon with adequate notice of investigative interviews and other material investigative activity;

i. After UNM's President reversed the first responsibility determination and expressly directed that the investigation be reopened, UNM provided previously withheld recordings but informed Sheldon that the investigation was "considered closed," and did not allow Sheldon to reopen the investigation or develop the additional evidence Sheldon identified;

j. UNM repeatedly adjudicated allegations that depended substantially upon the Complainant's credibility without ever providing Sheldon a single meaningful opportunity to cross-examine the Complainant about her allegations, inconsistencies, and credibility;

k. UNM repeatedly adjudicated allegations that depended substantially upon the credibility of Complainant's friends without providing Sheldon a single meaningful opportunity to cross-examine her friends about the allegations, inconsistencies, and credibility;

l. UNM imposed sanctions based in part on the erroneous assertion that Sheldon was already on disciplinary probation when he had never previously been on disciplinary probation;

m. After Sheldon successfully appealed his first responsibility determination, UNM again found him responsible and imposed an indefinite campus bar that was more severe than the finite campus-bar sanction previously imposed without any explanation;

n. UNM improperly shifted the burden of proof to Sheldon to disprove the allegations;

o. The hearing officers failed to act as independent arbitrators;

p. After Sheldon successfully appealed his second responsibility determination, the Board of Regents ordered him to undergo a third formal Title IX hearing without resolving the dispositive procedural objections Sheldon raised that would have barred that hearing.

q. The third hearing officer also failed to resolve the dispositive procedural objections Sheldon raised that would have barred that hearing.

r. The third hearing officer failed to properly consider the fact that the DNA evidence conclusively showed Complainant was not being honest;

s. The hearing officers collectively excluded exculpatory evidence and witnesses contrary to the Title IX regulations such that Sheldon, as the male respondent, would be uniquely disadvantaged and lacked cause in doing so;

t. The third hearing officer and the Dean of Student's Office failed to acknowledge that the procedural violations associated with the case barred the formal investigation, the formal hearing, and the imposition of disciplinary sanctions, as addressed in Sheldon's impact statement;

u. The third Hearing Officer then declined to address procedural violations arising from the investigation but nonetheless concluded he had jurisdiction before again finding Sheldon responsible, without providing Sheldon any opportunity to address the Hearing Officer's false claim that a formal complaint had been lodged on April 27, 2022.

185. UNM and Board of Regents's procedural violations did not operate neutrally. They repeatedly favored the interests of the female Complainant while ignoring, restricting, postponing, or declining to resolve evidentiary and procedural protections important to Sheldon as a male Respondent.

186. UNM and Board of Regents treated the procedural requests, evidentiary positions, and nonparticipation of the female Complainant drastically more favorably than it treated Sheldon's requests, evidence, and participation. For example,

a. The Complainant informed UNM that she did not wish to participate in the Title IX process and did not file a formal complaint, yet UNM, without following the Title IX protocols and regulations, continued the disciplinary process on her behalf;
b. UNM accommodated the Complainant's *ex parte* request for a delay in proceedings, without notifying Sheldon, considering the impact on him, or allowing him to advocate against the delay.
c. UNM never provided any good cause that justified the delay to Sheldon.
d. The Complainant's advisor was allowed to object to the inclusion of Sheldon's witnesses and evidence when—under UNM's rules—her advisor was only permitted to cross-examine the witnesses, not object as an attorney would.
e. UNM permitted the Complainant's position, witnesses and allegations to be presented during the third formal Title IX hearing even though she declined to appear for questioning, as did her witnesses, while restricting Sheldon's ability to present his own witness testimony and other defense evidence.

187. Rather than resolving these Title IX procedural issues when placed on notice by Sheldon—including its jurisdiction to even initiate the proceedings—UNM and the Board of Regents subjected Sheldon to years of unfair and unnecessary Title IX adjudications;

188. This multi-year adjudication of this Title IX grievance was materially deficient, without legal basis, and contrary to Title IX and the DOJ's critique of UNM;

189. Based on the foregoing, UNM and Board of Regents violated the basic requirements of equal protection and due process under the Title IX's statutory and regulatory framework.

190. The cumulative procedural irregularities, their consistently one-sided operation, UNM's and the Board of Regents's differential treatment of the female the Complainant verse the male Respondent, and UNM's continuation of proceedings against Sheldon despite his successful appeals and raising critical objections that were intentionally left unresolved, show that Sheldon's sex was a motivating factor in UNM's disparate treatment of him.

191. As a result, UNM and Board of Regents subjected Sheldon to discrimination on the basis of sex in violation of Title IX, 20 U.S.C. § 1681(a). *See Doe v. Columbia Univ.*, 831 F.3d 46, 56–57 (2d Cir. 2016) (identifying failing "to act in accordance with University procedures designed to protect accused students" as an allegation supporting the inference of sex discrimination).

**COUNT II**

**Retaliation in violation of Title IX of the Education Amendments of 1972**

**(Defendants UNM and Board of Regents)**

192. Sheldon incorporates the preceding paragraphs as if fully set forth herein.

193. Title IX prohibits retaliation against a person because he complained of sex discrimination or otherwise exercised rights protected by Title IX. *See Jackson v. Birmingham Board of Education*, 544 U.S. 167, 173–74 (2005); *Doe v. University of Kentucky*, 111 F.4th 705 (6th Cir. 2024).

194. Sheldon engaged in protected activity by challenging UNM's discrimination on the basis of sex in Title IX proceedings by filing a federal civil rights action on September 21, 2023.

195. UNM and the Board of Regents, as defendants in the federal lawsuit, knew of Sheldon's protected activity. That federal action challenged the same disciplinary matter that UNM continued to investigate, adjudicate, and sanction in express violation of Title IX and its supporting regulatory framework.

196. After Sheldon filed his federal civil rights case, the second hearing officer refused to rule on the procedural defects that would have barred the second formal Title IX hearing.

197. After Sheldon filed his federal civil rights case, the second hearing officer refused to allow Sheldon to present material witnesses and defenses.

198. After Sheldon filed his federal civil rights case, the second hearing officer held that Sheldon had violated UNM's code of conduct.

199. After Sheldon filed his federal civil rights case, the second hearing officer referred the case to the Dean of Students Office to impose sanctions.

200. After Sheldon filed his federal civil rights case, the Dean of Students Office *increased* disciplinary sanctions against Sheldon without explanation.

201. After Sheldon successfully appealed the outcome of the second adjudication, UNM and the Board of Regents remanded the case for a third formal Title IX hearing.

202. In so doing, UNM and the Board of Regents instructed the new hearing officer not to resolve the procedural defects that would have prohibited the third Title IX hearing, even though, on paper, UNM and the Board of Regents had ordered a de novo review.

203. At the third hearing, Hearing Officer Crow refused to resolve the procedural errors raised by Sheldon that would have barred a third formal Title IX hearing, yet the Hearing Officer referred to an April 27, 2022, email as proving a Formal Complaint existed without ever giving Sheldon the opportunity to challenge that conclusion.

204. The third Hearing Officer's conduct speaks to rank incompetence, a conflict of interest, and/or deep seeded bias induced by UNM's and the Board of Regents' desire to retaliate against Sheldon.

205. These actions were materially adverse to Sheldon, and were retaliatory because requiring Sheldon to repeatedly defend himself in formal Title IX hearings he had the legal right to avoid subjected Sheldon to unwarranted emotional distress, the financial burden of attorney's fees and expenses, and the constructive eviction from UNM to study on a campus that welcomed him instead of persecuting him.

206. UNM’s and the Board of Regent’s actions after Sheldon filed a federal civil suit complaining of sex discrimination and constitutional violations of due process and equal protection, would deter a reasonable person from exercising rights protected by Title IX.

207. In *Doe v. University of Kentucky*, 111 F.4th 705 (6th Cir. 2024), the Sixth Circuit held that a university disciplinary proceeding is an educational activity or program for purposes of Title IX retaliation and recognized that actions taken in administering such a proceeding can constitute adverse action.

208. The temporal relationship between Sheldon's protected activity and UNM’s subsequent actions, the unexplained escalation of his sanctions, UNM's repeated continuation of the disciplinary proceeding following successful appeals, and UNM's decision to proceed with a third adjudication without providing a forum to resolve Sheldon's outstanding procedural objections, considered collectively, show that UNM's post-lawsuit actions were motivated by retaliation for Sheldon's opposition to sex discrimination and his filing of his federal civil rights action.

209. There is a causal connection based on the timing and sequence of UNM’s and the Board of Regents’s knowledge of Sheldon’s federal civil rights litigation, UNM’s and Board of Regents’s conduct in refusing to resolve his procedural claims, refusing to entertain them on appeal, and then hiring a third Hearing Officer and instructing that Hearing Officer not to address those claims.

210. That retaliatory conduct all occurred after Sheldon filed his federal lawsuit.

211. Despite repeated formal Title IX hearings and multiple appeals, not one of the procedural defects Sheldon has complained about since 2023 has been resolved.

212. UNM’s and Board of Regents’s retaliation caused Sheldon legally compensable educational and economic injuries, including attorney’s fees and expenses, and entitles him to appropriate relief.

**COUNT III**

**Violation of 42 U.S.C. § 1983 – Fourteenth Amendment Procedural Due Process**

**(Against Defendants Sanchez, Hill, and Crow)**

213. Sheldon incorporates the preceding paragraphs as if fully set forth herein.

214. At all relevant times, Sanchez, Hill, and Crow acted under color of state law.

215. As an enrolled student facing expulsion and other serious discipline, Sheldon possessed a protected property interest in his continued education at UNM.

216. The Fourteenth Amendment prohibited the individual Defendants from depriving Sheldon of that interest without constitutionally adequate notice and a meaningful opportunity to be heard at a meaningful time and in a meaningful manner.

217. The process afforded Sheldon was constitutionally inadequate.

218. Defendants withheld material witness recordings before the first responsibility determination.

219. Defendants failed to meaningfully reopen the investigation after President Stokes ordered it reopened after Sheldon's first appeal.

220. Defendants continued to restrict Sheldon's access to evidence; failed to develop material exculpatory evidence; restricted Sheldon's ability to present his own witnesses and other defense evidence; and repeatedly adjudicated disputed credibility issues while material witnesses, including the Complainant, were unavailable for follow up questions about material inconsistencies in their statements.

221. Defendants uniformly refused to remedy or rectify the procedural defects in the Title IX proceedings that Sheldon repeatedly raised, which would have terminated this case promptly.

222. Sanchez, a CEEO official, personally participated in initiating, supervising, and filing formal Investigative Reports that were unfavorable to Sheldon.

223. Sanchez denied Sheldon a meaningful opportunity to participate in the investigation of the allegations.

224. Sanchez pursued a formal Title IX investigation contrary to Title IX rules and regulations, including but not limited to the lack of a formal complaint and failed to give proper and timely notice.

225. Sanchez had no legal authority to pursue a Title IX investigation.

226. Sanchez did not notify Sheldon on the one witness interview she conducted, in violation of Title IX.

227. Hill, the second Hearing Officer, refused to halt the second formal Title IX hearing despite being made aware of the procedural defects Sheldon raised.

228. Hill, the second Hearing Officer, controlled the second hearing and excluded Sheldon's witnesses, including Dr. David Ley, from testifying based on a restriction tied to whom CEEO had interviewed, even though CEEO had not interviewed a single witness other than Wesley Graham.

229. Crow, the third Hearing Officer, controlled the third hearing and stated that "procedural violations from the investigation process" were not within his purview and therefore did not resolve those objections.

230. Hearing Officer Crow concluded that he had jurisdiction to proceed despite lacking a formal complaint and refusing to provide Sheldon with an opportunity to address the April 27, 2022, email Hearing Officer Crow claimed was a formal complaint.

231. The hearing officers, Hill and Crow, refused to resolve material Title IX procedural defects before holding formal Title IX hearings.

232. Hearing Officer Crow controlled the third formal Title IX hearing and excluded Sheldon's witnesses from testifying and excluded evidence without a valid legal justification.

233. Hearing Officer Crow unfairly construed Complainant's credibility by refusing to address the DNA evidence and other evidence showing her to have mislead everyone in the case.

234. These acts and omissions deprived Sheldon of a meaningful opportunity to address evidence presented against him and to introduce material evidence into the case before Defendants resolved the question of Sheldon's responsibility for violating UNM's code of conduct was decided.

235. Defendants' repeated refusal to resolve the many procedural errors deprived Sheldon of a prompt and fair hearing and there was no valid basis for prolonged delays and years of proceedings.

236. As a direct and proximate result of the individual Defendants' conduct, Sheldon suffered deprivation of his constitutional right to procedural due process and equal protection of the law and sustained damages.

**PRAYER FOR RELIEF**

Based on the foregoing, Sheldon respectfully requests that the Court enter judgment in his favor, including:

A. An award of compensatory damages for all legally recoverable economic and educational losses in an amount to be determined at trial, including, without limitation, reimbursement and repayment for all of Sheldon's tuition and related expenses at universities other than UNM; payment of Sheldon's expenses incurred as a result of the prolonged litigation before UNM's CEEO Hearing Officers, UNM's President, and UNM's Board of Regents; damages for deprivation of equal access to the educational benefits and opportunities provided by the University; and damages for past, present and future harm to physical well-being, emotional and psychological damages, damage to reputation, past and future economic losses, loss of educational opportunities, and loss of future career prospects.

B. Correction or expungement of Sheldon's educational records reflecting all the adverse actions Defendant UNM has taken in this matter;

C. An award of punitive damages as permitted by law;

D. An award of prejudgment and post-judgment interest as permitted by law;

E. An award of reasonable attorneys' fees and costs under 42 U.S.C. § 1988, Title IX and other applicable law; and

F. Aa award of such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**ROTHSTEIN DONATELLI LLP**

*/s/ Marc Lowry*
MARC M. LOWRY
WOUTER ZWART
500 4th Street NW, Suite 400
Albuquerque, New Mexico 87102
(505) 243-1443
mlowry@rothsteinlaw.com
wzwart@rothsteinlaw.com

*Attorneys for Plaintiff Skyler Sheldon*